UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMEL KING,

                                    Plaintiff,
                                                        9:11-CV-1457
v.                                                      (DNH/TWD)

C.O. MCINTYER. LT. MCDERMOTT,
C.O. STEVENS, SGT. YOUNG,
C.O. KANE, C.O. HESSLE,
C.O. DOTY, C.O. CATLIN,
DEPT. C. MILLER,
COMM. BRIAN FISCHER,
SUP. MATUSCELLO,[1]

                                    Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

JAMEL KING, 01-A-4949
Plaintiff *pro se*
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

HON. ERIC T. SCHNEIDERMAN                       DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

---

[1]        This defendant is currently listed in the caption and throughout the docket as "Matsucello." In his operative complaint, Plaintiff refers to this defendant as "Martuscello" (Dkt. 9 ¶¶ 16, 28), and in their Motion for Partial Summary Judgment, Defendants refer to this defendant as "Martuscello" (Dkt. No. 58-3 at 2, 3, 5, 6). The Clerk is directed to correct the caption to list this defendant as "Martuscello."

## REPORT-RECOMMENDATION and ORDER

This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Jamel King alleges that unnamed Correctional Officer John Doe requested that Plaintiff assault another inmate and that, based on Plaintiff's refusal to do so, the named Defendants retaliated against Plaintiff by: 1) placing Plaintiff on keeplock; 2) issuing false misbehavior reports; 3) finding Plaintiff guilty in disciplinary hearings; and 4) affirming Plaintiff's guilt on appeal. (Dkt. No. 9.) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 58.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I.     BACKGROUND

The following facts are derived from the face of the operative complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff alleges that in November 2010, while incarcerated at Coxsackie Correctional Facility, Correctional Officer ("C.O.") John Doe requested that Plaintiff assault another inmate. (Dkt. No. 9 ¶ 7.) C.O. John Doe stated, "We have someone who like [sic] to touch kids, and if you will like to beat him up I would not see nothing." *Id.* Plaintiff refused to assault the other inmate, telling C.O. John Doe, "I'm not down with that and can you please not approach me with something like that." *Id.* C.O. John Doe stated, "[I]f you're not going to beat him up, then you must be down with touching kids to [sic]." *Id.* Plaintiff replied to C.O. John Doe, "No you have

that wrong, you are the one that touch [sic] kids." *Id.* ¶ 8. C.O. John Doe became upset and stated, "Your ass is going to cellblock C or D, the house of pain so pack your things and I will let my pals up their [sic] know that you are an asshole." *Id.*

Plaintiff alleges that he was moved to Cellblock D-3 and placed on keeplock by Defendant Hessle. (Dkt. No. 9 ¶ 9.) When Plaintiff asked Defendant Hessle why he was on keeplock, Defendant Hessle responded, "[B]ecause you wouldn't take care of business over in cellblock B-1 for my pal so you're [an] asshole." *Id.*

Plaintiff alleges that he was then moved to Cellblock F-3, where Defendant McDermott found Plaintiff guilty and sentenced him to fifteen days of keeplock confinement. (Dkt. No. 9 ¶ 10.) After the completion of his keeplock confinement, Plaintiff was put on hold until another cell became available and was then moved to Cellblock C-2. *Id.* ¶ 11.

Plaintiff alleges that upon arriving at Cellblock C-2, Defendant McIntyer started harassing Plaintiff. (Dkt. No. 9 ¶ 12.) Plaintiff wrote a complaint to Defendant Fischer regarding Defendant McIntyer's conduct. *Id.* As a result of Plaintiff's complaint, Defendant McIntyer wrote three false misbehavior reports in retaliation. (Dkt. No. 9 ¶ 13.)

Plaintiff alleges that on or about January 12, 2011, Plaintiff attended a disciplinary hearing before Defendant McDermott. (Dkt. No. 9 ¶ 14.) At the disciplinary hearing, Plaintiff submitted to Defendant McDermott documentary evidence in the form of the complaints Plaintiff lodged against Defendant McIntyer. *Id.* Plaintiff explained to Defendant McDermott the circumstances of the misbehavior reports lodged against Plaintiff. *Id.* Plaintiff explained to Defendant McDermott that the misbehavior reports were motivated by Plaintiff's refusal to comply with C.O. John Doe's request that Plaintiff assault another inmate. *Id.*

Plaintiff alleges that Defendant McDermott took Plaintiff's letters of complaint and refused to give them back. (Dkt. No. 9 ¶ 15.) Defendant McDermott stated, "[D]o you think I will take your word over my officer's[?] No[]one write[s] complaint[]s against my officer[]s in my jail and walk[]s away." *Id.* Defendant McDermott then found Plaintiff guilty on all charges and sentenced Plaintiff to forty-five days keeplock. *Id.* Subsequently, Plaintiff was moved back to Cellblock F-3. (Dkt. No. 9 ¶ 16.)

Plaintiff appealed Defendant McDermott's finding of guilt to Defendant Martuscello and Defendant Miller. *Id.* Defendant Martuscello and Defendant Miller affirmed Defendant McDermott's finding of guilt. *Id.*

Plaintiff alleges that on or about January 12, 2011, while he was on keeplock, Plaintiff wrote a complaint to Defendant Fischer complaining about the "constant harassment" by the staff at the Coxsackie Correctional Facility. (Dkt. No. 9 ¶ 16.)

Plaintiff alleges that on or about March 27, 2011, prior to being released from keeplock confinement, Plaintiff wrote another letter to Defendant Fischer complaining about the present harassment and future harassment. (Dkt. No. 9 ¶ 17.) In the letter, Plaintiff stated in part, "[T]he way things are looking, I will be in SHU or keeplock within a week." *Id.*

Plaintiff alleges that after writing the letter, he was released from keeplock confinement and moved back to Cellblock C-3 where he "became a target of harassment" by Defendant McIntyer. (Dkt. No. 9 ¶ 18.)

Plaintiff alleges that on or about March 28, 2011, Plaintiff returned to Cellblock C-3 from the prison law library. (Dkt. No. 9 ¶ 19.) Defendant McIntyer saw Plaintiff and stated to Defendant Catlin, "King like[]s to write complaint[]s against officer[]s in Coxsackie and you

know what we do to people like him." *Id.* Defendant Catlin smiled and stated, "[Y]es, we do like we always do, jump on them and write tickets." *Id.*

Plaintiff alleges that on or about March 28, 2011, Defendant Catlin wrote Plaintiff a false misbehavior report and stated, "[T]his is only the beginning, you will be seeing move [sic] from my pal[]s soon." (Dkt. No. 9 ¶ 20.)

Plaintiff alleges that on or about April 5, 2011, Defendant Stevens stated to Plaintiff, "I heard that you like to write complaint[]s against staff. Well you pick[ed] the wrong one this time." (Dkt. No. 9 ¶ 21.)

Plaintiff alleges that on or about April 5, 2011, upon returning to his cell from a program, Plaintiff's cell had been searched and he had received a misbehavior report issued by Defendant Stevens. (Dkt. No. 9 ¶ 22.)

Plaintiff alleges that on or about April 6, 2011, he attended a disciplinary hearing before Defendant McDermott. (Dkt. No. 9 ¶ 23.) Plaintiff explained to Defendant McDermott that the misbehavior report was motivated by his complaints against staff. *Id.* Plaintiff explained to Defendant McDermott that he had been threatened in response to his complaints. *Id.* Plaintiff explained that there was another misbehavior report pending against him written by Defendant Stevens on April 5, 2011. *Id.*

Plaintiff alleges that Defendant McDermott found Plaintiff guilty and sentenced him to thirty days keeplock and suspended the time for thirty days. (Dkt. No. 9 ¶ 23.) After Plaintiff's disciplinary hearing concluded, Defendant McDermott turned off the tape recorder and stated, "[Y]ou picked the wrong one to write a complaint against, Officer McIntyer is my brother in law." *Id.*

Plaintiff alleges that on April 9, 2011, Defendant Young had Plaintiff brought to the dayroom area of Cellblock C-1. (Dkt. No. 9 ¶ 24.) In the presence of approximately five other officers, Defendant Young threatened Plaintiff. *Id.* Defendant Young told Plaintiff to "drop [Plaintiff's] complaints and the problems will stop." *Id.* Defendant Young stated that if Plaintiff continued to write complaints, that Plaintiff would "have a hard time here in Coxsackie." *Id.*

Plaintiff alleges that he refused to drop his complaint and was returned to his cell. (Dkt. No. 9 ¶ 24.) Upon returning to his cell, Defendant Doty stated to Plaintiff, "I just got a [call] from down stairs about you and you will not be getting recreation today." *Id.* Defendant Doty then issued Plaintiff a false misbehavior report. *Id.*

Plaintiff alleges that on or about April 9, 2011, Defendant Stevens searched Plaintiff's cell and issued Plaintiff another misbehavior report. (Dkt. No. 9 ¶ 25.)

Plaintiff alleges that on or about April 13, 2011, Defendant Stevens stated to Plaintiff, "[Y]ou [are] still here, you're not [on] keeplock. Well I will take care of that." (Dkt. No. 9 ¶ 25.)

Plaintiff alleges that on or about April 15, 2011, Plaintiff attended three disciplinary hearings before Defendant McDermott. (Dkt. No. 9 ¶ 26.) Plaintiff explained to Defendant McDermott that the misbehavior reports were false and that they were motivated by retaliation for Plaintiff having written complaints against prison staff concerning Plaintiff's refusing C.O. John Doe's request to assault another inmate. *Id.*

Plaintiff alleges that Defendant McDermott stated that he did not care about Plaintiff's defense and that Plaintiff picked the wrong person to complain about. (Dkt. No. 9 ¶ 26.) Defendant McDermott stated that Plaintiff should have done what the correctional officers

wanted and that doing so would have saved him from all of his problems. *Id.*

Plaintiff alleges that Defendant McDermott found Plaintiff guilty and imposed a sentence totaling ninety days keeplock with restrictions on Plaintiff's access to commissary, phones, and packages. (Dkt. No. 9 ¶ 27.)

Plaintiff alleges that on or about April 16, 2011, Plaintiff appealed Defendant McDermott's decision to Defendant Martuscello. (Dkt. No. 9 ¶ 28.) Plaintiff explained to Defendant Martuscello the circumstances behind all of the misbehavior reports. *Id.* On or about May 17, 2011, and June 20, 2011, Defendant Miller affirmed Defendant McDermott's decision. *Id.*

Plaintiff alleges that when he was moved back to Cellblock F-1, Defendant Young told Defendant Kane that Plaintiff likes to write complaints and to make sure that Plaintiff gets "the special treatment" while on keeplock. (Dkt. No. 9 ¶ 29.)

Plaintiff alleges that on or about June 6, 2011, Defendant Kane made sure that Plaintiff was separated from the rest of the inmates during keeplock recreation as retaliation for the complaints Plaintiff wrote against Defendants concerning the harassment Plaintiff was receiving. (Dkt. No. 9 ¶ 29.)

Plaintiff filed his original complaint in this action on December 14, 2011. (Dkt. No. 1.) Plaintiff amended his complaint on January 5, 2012. (Dkt. No. 9.) Defendants filed a motion for partial summary judgment on April 9, 2013. (Dkt. No. 58.) On July 23, 2013, Defendants requested that the Court treat their motion for summary judgment as a motion to dismiss, which the Court granted. (Dkt. Nos. 68-69.)

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III.   ANALYSIS

### A.   Official Capacity

Plaintiff has sued Defendants in their official capacities.  (Dkt. No. 9 ¶ 6-c.)  Defendants McIntyer, McDermott, Stevens, Young, Kane, Hessle, Catlin, Miller, Fischer, and Martuscello move to dismiss the official capacity claims against them.  (Dkt. No. 58-3 at 3-4.)  Defendants argue that, under the Eleventh Amendment, they are immune from suit in their official capacities for money damages and injunctive relief.  *Id.*  Defendants are correct that, under the Eleventh Amendment, they are immune from suit for money damages.  However, Defendants are incorrect that the Eleventh Amendment provides them immunity from suit for injunctive relief.

### 1.   Claim for Damages

The Eleventh Amendment bars suits for damages against state officials acting in their official capacities.  *See Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under § 1983] for money damages against state officials in their official capacities.").  All DOCCS[2] employees are state officials for the purposes of the Eleventh Amendment.  *See, e.g.*, *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Tolliver v. NY State Corr. Officers*, No. 99 CIV 9555, 2000 U.S. Dist. LEXIS 11531, at *7,  2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional

---

[2]    On April 1, 2011, the New York State Department of Correctional Services and Division of Parole merged into one comprehensive agency entitled the New York State Department of Corrections and Community Supervision, referred to as "DOCCS."

Services.").[3]  Here, Defendants are all DOCCS employees.  (Dkt. No. 9 ¶¶ 6-d, 24.)  Thus, the

Eleventh Amendment bars claims for damages against them in their official capacities.[4]

Therefore, I recommend that the Court grant Defendants' motion to dismiss Plaintiff's official

capacity claims for damages.

Where a pro se complaint fails to state a cause of action, the court generally "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (internal quotation and citation omitted).  However, an opportunity to amend is

not required where "the problem with [the plaintiff's] causes of action is substantive" such that

"better pleading will not cure it."  *Id.* (citation omitted).  Here, better pleading would not cure the

substantive problem with Plaintiff's claims for damages against Defendants in their official

capacities.  Therefore, I recommend that the Court dismiss these claims without leave to amend.

## 2.      Claims for Injunctive Relief

The Eleventh Amendment does not, however, bar Plaintiff's claims for injunctive relief

against Defendants in their official capacities.  Under the doctrine established in *Ex parte Young*,

209 U.S. 123, 28 S.Ct. 441 (1908), "[a] plaintiff may avoid the Eleventh Amendment bar to suit

---

[3]      The Court will provide Plaintiff with a copy of this unpublished decision in
accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009)
(per curiam).

[4]      Defendants are not, however, entitled to Eleventh Amendment immunity for the
damages claims against them in their individual capacities.  *Farid v. Smith*, 850 F.2d 917, 921
(2d Cir. 1988) ("The eleventh amendment bars recovery against an employee who is sued in his
official capacity, but does not protect him from personal liability if he is sued in his 'individual'
or 'personal' capacity.").

and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law; and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (punctuation omitted).

It is well established that § 1983 actions against state officials in which the plaintiff requests prospective injunctive relief are not barred by the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 338 (1979) (in a § 1983 action a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief). Therefore, Defendants' assertion that the Eleventh Amendment bars Plaintiff's claim for injunctive relief is incorrect.

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (punctuation omitted). As to the first prong, in determining whether an "ongoing violation" exists, the court asks, "does the enforcement of the law amount to a continuous violation of plaintiffs['] constitutional rights or a single act that continues to have negative consequences for plaintiffs." *Roberts v. New York*, 911 F. Supp. 2d 149, 161 (N.D.N.Y. 2012). As to the second prong, where the relief requested by a plaintiff is an injunction against state officials, this satisfies the requirement that the relief sought be prospective in nature. *See In re Deposit Agency*, 482 F.3d at 618-19 (finding that "it is undisputed that the injunctive relief sought . . . is prospective in nature.").

Here, Plaintiff alleges two categories of violation for which he seeks injunctive relief: 1) harassment by Defendants (Dkt. No. 9 ¶¶ 7-9, 12, 19, 21, 25, 29, 31); and 2) the issuance of false misbehavior reports (Dkt. No. 9 ¶¶ 13, 20, 22, 24, 25). Plaintiff requests that injunctive relief be granted as to these violations, respectively, by: 1) stopping the harassment and retaliation against Plaintiff; and 2) expunging the false misbehavior reports from Plaintiff's record. (Dkt. No. 9 at 8.) Plaintiff meets the requirements of *Ex parte Young* for both claims of injunctive relief.

Plaintiff's claim for injunctive relief in the form of enjoining Defendants from harassing Plaintiff meets the requirements of *Ex parte Young* and therefore avoids the Eleventh Amendment bar to suit against state officials. Plaintiff sufficiently "(a) alleges an ongoing violation of federal law; and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618.

First, in addition to the approximately six incidents of harassment that Plaintiff alleges (Dkt. No. 9 ¶¶ 7-9, 12, 19, 21, 25, 29), Plaintiff states that he "has been constantly writing the defendant[]s for help with the everyday harassment. Each time plaintiff sees defendant[]s McIntyer and Kane they point plaintiff out to other officer[]s and mak[e] threaten[ing] comments." (Dkt. No. 9 ¶ 31.) These statements by Plaintiff are sufficient to allege an ongoing violation of federal law. Plaintiff's allegation that he "has been *constantly* writing the defendant[]s for help with the *everyday* harassment" (Dkt. No 9 ¶ 31) (emphasis added) is sufficient to "amount to a continuous violation," *Roberts*, 911 F. Supp. at 161, of Plaintiff's constitutional rights so as to constitute an ongoing violation. Second, Plaintiff seeks relief properly characterized as prospective by requesting that Defendants be enjoined from continuing the harassment. Plaintiff's request that Defendants' be enjoined from performing certain conduct

12

necessarily concerns Defendants' future actions and is therefore, by definition, prospective in nature. Thus, Plaintiff's claim for injunctive relief as to the harassment meets the requirements of *Ex Parte Young* and avoids the Eleventh Amendment's bar to suit against Defendants.

Plaintiff's claim for injunctive relief in the form of expunging the false misbehavior reports issued against him likewise meets the requirements of *Ex parte Young* and therefore avoids the Eleventh Amendment bar to suit against state officials. Relief in the form of expunging disciplinary actions from a plaintiff's record is not barred by the Eleventh Amendment. *Sowell v. Weed*, No. 07-CV-6355(MAT), 2013 U.S. Dist. LEXIS 92866, at *17, 2013 WL 3324049, at *6 (W.D.N.Y. July 1, 2013) (holding that expungement of Department of Corrections' findings of guilt was form of relief not barred by Eleventh Amendment); *see also Nevarez v. Hunt*, 770 F. Supp. 2d 565, 568 (W.D.N.Y. 2011) (holding that expungement of disciplinary tickets was equitable relief not barred by Eleventh Amendment); *Jackson v. Johnson*, 30 F. Supp. 2d 613, 618-19 (S.D.N.Y. 1998). Here, Plaintiff requests that the false misbehavior reports issued against him be expunged from his record. (Dkt. No. 9 at 8.) Thus, Plaintiff's claim for injunctive relief meets the requirements of *Ex parte Young* and avoids the Eleventh Amendment's bar to suit against Defendants.

## B. Mootness

Defendants argue that because Plaintiff is no longer incarcerated at Coxsackie Correctional Facility, his claims for injunctive relief are moot and should be dismissed. (Dkt. No. 58-3 at 5-6). Defendants are correct as to only a portion of Plaintiff's claims for injunctive relief. As discussed above, Plaintiff alleges two categories of violation for which he seeks injunctive relief: 1) harassment by Defendants (Dkt. No. 9 ¶¶ 7-9, 12, 19, 21, 25, 29, 31); and 2)

the issuance of false misbehavior reports (Dkt. No. 9 ¶¶ 13, 20, 22, 24, 25). Plaintiff requests that injunctive relief be granted as to these violations, respectively, by: 1) stopping the harassment and retaliation against Plaintiff; and 2) expunging the false misbehavior reports from Plaintiff's record. (Dkt. No. 9 at 8.) Defendants are correct that the first category of alleged violation, harassment, is moot; however, Defendants are incorrect that the second category, false misbehavior reports, is moot.

As to the first category, harassment, Plaintiff's claim for injunctive relief is moot because he is no longer incarcerated at Coxsackie Correctional Facility. "[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). Here, after filing his complaint, Plaintiff was transferred from Coxsackie to three different correctional facilities and is presently incarcerated at Elmira Correctional Facility. (Dkt. Nos. 47, 55, 66.) Thus, Plaintiff's claim for injunctive relief in the form of stopping harassment and retaliation by Defendants is moot. Plaintiff would not be able to overcome the substantive problem posed by his transfer to a different correctional facility. Therefore, I recommend that the Court grant the motion to dismiss with respect to the claim for injunctive relief in the form of stopping the harassment at the Coxsackie Correctional Facility without leave to amend.

As to the second category of violation that Plaintiff alleges, the issuance of false misbehavior reports, Plaintiff's request for injunctive relief is not moot. As a remedy to this violation, Plaintiff requests that his record be expunged of all false misbehavior reports. (Dkt. No. 9 at 8). "[A] complaint should not be dismissed as moot if some injunctive relief could be granted, such as an order that material be expunged from an inmate's records." *Bass v. Grottoli*,

No. 94 Civ. 3220 (MGC), 1995 U.S. Dist. LEXIS 13916, at *19, 1995 WL 565979 at *6,

(S.D.N.Y. Sept. 25, 1995) (citing *Washington v. James*, 782 F.2d 1134, 1137 (2d Cir. 1986))

(holding that while plaintiff was transferred to another prison and therefore most of injunctive

relief sought was moot, injunctive relief in the form of requiring prison officials to remove from

plaintiff's record any mention of the suit could still be granted). Even though Plaintiff has been

transferred from Coxsackie to another correctional facility, injunctive relief can still be granted in

the form of expunging from Plaintiff's record the allegedly false misbehavior reports. Thus,

Plaintiffs' claim for injunctive relief in the form of expungement is not moot. Therefore, I

recommend that the Court deny Defendants' motion to dismiss with respect to Plaintiff's official

capacity claims for injunctive relief in the form of expungement.

### C.    Personal Involvement

Defendants argue that Plaintiff has failed to allege facts sufficient to support a finding

that Defendants Fischer, Miller, and Martuscello were personally involved in the alleged

constitutional deprivations. (Dkt. No. 58-3 at 7.) Defendants do not argue that Defendants

McIntyer, McDermott, Stevens, Young, Kane, Hessle, or Catlin lacked personal involvement.

Therefore, the Court will address the issue of personal involvement only as to Defendants

Fischer, Miller, and Martuscello.

Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)). In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some "tangible connection" between the unlawful conduct and the defendant. *Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). If the defendant is a supervisory official, a mere

linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of

respondeat superior) is insufficient to show his or her personal involvement in that unlawful

conduct. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431,

435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210

(2d Cir. 1985) (per curiam). In other words, supervisory officials may not be held liable merely

because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)

(citations omitted). Rather, supervisory personnel may be considered personally involved if they:

1) directly participated in the violation; 2) failed to remedy that violation after learning of it

through a report or appeal; 3) created, or allowed to continue, a policy or custom under which the

violation occurred; 4) had been grossly negligent in managing subordinates who caused the

violation; or 5) exhibited deliberate indifference to the rights of inmates by failing to act on

information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d

Cir. 1995) (citations omitted).[5]

### 1. Defendant Fischer's Personal Involvement

Defendants assert that Defendant Fischer lacked personal involvement in the alleged

constitutional deprivations. In support of this assertion, Defendants rely on two arguments.

---

[5]     In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the
underlying constitutional claim is a claim of intentional discrimination, a supervisory official's
liability must be judged by the official's purpose rather than the official's knowledge of
subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing
*Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have
determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F.
Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). I will assume for the purposes of this
motion that *Colon* remains good law.

First, Defendants submit that liability against a supervisory official for an alleged constitutional violation cannot be based on the doctrine of respondeat superior, citing *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). (Dkt. No. 58-3 at 6.) Second, Defendants argue, "just because a prisoner writes to supervisory officials about instances of alleged mistreatment does not, alone, justify holding those supervisory officials liable under Section 1983," citing *Liner v. Goord*, 310 F.Supp.2d 550, 555 (W.D.N.Y. 2004). *Id.* Defendants are correct as to their first argument concerning respondeat superior. However, Defendants' argument concerning the effect that a prisoner writing to a supervisor has on that supervisor's personal involvement is abrogated by *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013).

District courts in this circuit have routinely held that a prisoner's allegation that a supervisory official failed to respond to a grievance is insufficient to establish that the official "failed to remedy that violation after learning of it through a report or appeal" or "exhibited deliberate indifference . . . by failing to act on information indicating that the violation was occurring." *Rivera v. Goord*, 119 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2000). *See also Watson v. McGinnis,* 964 F. Supp. 127, 130 (S.D.N.Y. 1997) ("The law is clear that allegations that an official ignored a prisoner's letter are insufficient to establish liability."). Similarly, district courts have held that "an allegation that an official ignored a prisoner's letter of protest and request for investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002). However, the Second Circuit has recently cautioned courts against dismissing claims at the 12(b)(6) stage for failure to allege personal involvement where the plaintiff alleges that an official failed to respond to a letter of complaint. *Grullon*, 720 F.3d at 141 ("At the pleading

stage, even if Grullon had no knowledge or information as to what became of his Letter after he sent it, he would be entitled to have the court draw the reasonable inference . . . that the Warden in fact received the Letter, read it, and thereby became aware of the alleged conditions of which Grullon complained.").

Here, like the procedural posture in *Grullon*, Defendants challenge, *inter alia*, Plaintiff's claim of personal involvement as to Defendant Fischer in a motion to dismiss.[6] Thus, based on the holding in *Grullon*, Plaintiff is entitled to have the Court draw the reasonable inference from Plainitiff's pleadings that Defendant Fischer in fact received the three letters of complaint that Plaintiff described in his operative complaint. Based on this inference, Plaintiff has alleged facts sufficient to support a finding of Defendant Fischer's personal involvement. Therefore, I recommend that the Court deny Defendants' motion to dismiss with respect to Plaintiff's individual capacity claim against Defendant Fischer.

### 2.    Defendant Miller's Personal Involvement

Defendants assert that Defendant Miller lacked personal involvement in the alleged constitutional deprivations. In support of this assertion, Defendants point out that Plaintiff's allegations against Defendant Miller are that Defendant Miller affirmed two disciplinary hearing findings of guilt. (Dkt. No. 58-3 at 6.)

District courts in the Second Circuit disagree about whether simply affirming an allegedly unconstitutional disciplinary decision constitutes personal involvement. Courts declining to find personal involvement conclude that there is no "ongoing" violation for the supervisory official to

---

[6]    The Court granted Defendants' motion to treat their motion for summary judgment as a motion to dismiss. (Dkt. No. 69.)

"remedy" in such a situation. *See Jamison v. Fischer*, No. 11 Civ. 4697 RJS, 2012 U.S. Dist. LEXIS 144307, at *14-15, 2012 WL 4767173, at *5 (S.D.N.Y. Sept. 27, 2012) ("Despite the fact that Plaintiff continued to be housed in the SHU, Bezio's involvement and review of the matter was distinct from whatever took place at the hearing, and he cannot be held liable . . . for violations that occurred at the hearing and were not ongoing."). *See also Abdur-Raheem v. Selsky*, 598 F. Supp. 2d 367, 370 (W.D.N.Y. 2009); *Chavis v. vonHagn*, No. 02-CV-0119, 2009 U.S. Dist. LEXIS 6871, at *198-99, 2009 WL 236060, at *68 (W.D.N.Y. Jan. 30, 2009); *Odom v. Calero*, No. 06 Civ. 15527, 2008 U.S. Dist. LEXIS 52408, at *16-20, 2008 WL 2735868, at *6-7 (S.D.N.Y. July 10, 2008); *Ramsey v. Goord*, No. 05-CV-47A, 2005 U.S. Dist. LEXIS 42953, at *18-20, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005).

Other district courts in this circuit have found personal involvement where a supervisory official affirms an allegedly constitutionally infirm hearing decision. *See Thomas v. Calero*, 824 F. Supp. 2d 488, 509-10 (S.D.N.Y. 2011); *Holmes v. Fischer*, 764 F. Supp. 2d 523, 540 (W.D.N.Y. 2011); *Rodriguez v. Selsky*, No. 9:07-CV-0432, 2010 U.S. Dist. LEXIS 23813, 2010 WL 980273, at *6 (N.D.N.Y. Mar. 15, 2010); *Baez v. Harris*, No. 9:01-CV-807, 2007 U.S. Dist. LEXIS 8728, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007); *Johnson v. Coombe*, 156 F. Supp. 2d 273, 278 (S.D.N.Y. 2001)  These courts find that there is an "ongoing" violation because having the power to vacate an allegedly unconstitutional decision, refusing to do so, and allowing an inmate to remain in the SHU  "knowingly continu[es] a deprivation of liberty without due process of law." *Delgado v. Bezio*, No. 09 Civ. 6899 (LTS), 2011 U.S. Dist. LEXIS 51917, at *27, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011).

I agree with Magistrate Judge David E. Peebles that the cases finding personal

19

involvement in such situations "appear to be both better reasoned and more consistent with the Second Circuit's position regarding personal involvement." *Bennett v. Fischer*, No. 9:09-CV-1236, 2010 U.S. Dist. LEXIS 139587, at *38-39, 2010 WL 5525368, at *12 (N.D.N.Y. Aug. 17, 2010).

Here, Plaintiff alleges that Defendant Miller affirmed two disciplinary findings of Plainitiff's guilt. (Dkt. No. 9 ¶¶ 16, 28.) Accordingly, under the reasoning articulated in *Bennett*, *supra*, Plaintiff's allegations that Defendant Miller affirmed two disciplinary findings are sufficient to support the finding that Defendant Miller was personally involved in the alleged constitutional deprivations. Therefore, I recommend that the Court deny Defendants' motion to dismiss with respect to Plaintiff's individual capacity claim against Defendant Miller.

### 3. Defendant Martuscello's Personal Involvement

Defendants state that "plaintiff's allegations against defendant Martuscello . . . are that plaintiff appealed two disciplinary guilty findings to defendant Martuscello." (Dkt. 58-3 at 5.) This characterization of Plaintiff's allegations against Defendant Martuscello is partially incorrect.

In his operative complaint, Plaintiff does, as Defendants assert, allege that he appealed two disciplinary findings of guilt to Defendant Martuscello. (Dkt. 9 ¶¶ 16, 28.) However, in describing the first of these two appeals to Defendant Martuscello, Plaintiff goes further and alleges that Defendant Martuscello also affirmed one of these two disciplinary findings. Plaintiff states, "Plaintiff appealed defendant[] McDermott's decision to defendant Martuscello and defendant Miller who affirmed defendant McDermott's decision." (Dkt. 9 ¶ 16.)

This statement is ambiguous. On the one hand, it could be interpreted to mean Plaintiff

appealed the decision to Defendant Martuscello and subsequently Defendant Miller affirmed the decision. On the other hand, the statement could be interpreted to mean Plaintiff appealed the decision to both Defendants Martuscello and Miller and both of them affirmed the decision. Courts are "obligated to construe a pro se complaint liberally." *Harris*, 572 F.3d at 72 (citation omitted). Accordingly, the Court interprets Plaintiff's statement that he "appealed defendant[] McDermott's decision to defendant Martuscello and defendant Miller who affirmed defendant McDermott's decision" (Dkt. 9 ¶ 16) as asserting that Defendant Martuscello, in addition to Defendant Miller, affirmed Defendant McDermott's disciplinary finding of guilt. Therefore, in discussing Defendants' personal involvement, *infra*, the Court will treat Plaintiff's complaint as alleging, *inter alia*, that Defendant Martuscello affirmed one of Plaintiff's two disciplinary appeals.

As discussed above, a correctional officer's affirmance of a prisoner's disciplinary finding of guilt constitutes the correctional officer's personal involvement in the alleged constitutional deprivation. Accordingly, having interpreted Plaintiff's complaint to allege that Defendant Martuscello affirmed one of Plaintiff's two disciplinary findings of guilt, Plaintiff's allegation is sufficient to support the finding that Defendant Martuscello was personally involved in Plaintiff's alleged deprivation. Therefore, I recommend that the Court deny Defendant's motion to dismiss with respect to Plaintiff's individual capacity claim against Defendant Martuscello.

### D. Defendant Doty

Under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within 120 days after the filing of the complaint. Fed. R. Civ. P. 4(m).

This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice, which provide that all defendants must be served with the summons and complaint within sixty days of the filing of the complaint. L.R. 4.1(b). Here, more than 120 days have elapsed since the filing of the complaint and Defendant Doty has not been served. (Dkt. No. 51.) As a result, Plaintiff is currently in violation of both the Federal Rules of Civil Procedure and the Local Rules of Practice for this Court. It is therefore recommended that the Court dismiss the claims against Defendant Doty without prejudice unless Plaintiff serves Defendant Doty within thirty days of any Order adopting this Report-Recommendation.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 58) be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court recommends that Defendant's motion to dismiss be granted as to:

1. Plaintiff's official capacity claims for damages against all Defendants; and

2. Plaintiff's claim for injunctive relief in the form of stopping harassment at the Coxsackie Correctional Facility.

The Court further recommends that Defendant's motion to dismiss be denied as to:

1. Plaintiff's claim of injunctive relief in the form of expunging from his records false misbehavior reports;

2. Plaintiff's claim of Defendant Fischer's personal involvement;

3. Plaintiff's claim of Defendant Miller's personal involvement; and

4. Plaintiff's claim of Defendant Martuscello's personal involvement; and it is further

**RECOMMENDED** that the Court *sua sponte* dismiss Plaintiff's claims against Defendant Doty without prejudice for failure to serve that Defendant; and it is further

**RECOMMENDED** that Defendants be directed to respond to the complaint as provided in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk of the Court provide Plaintiff with a copy of the following unpublished decisions:

1.  *Tolliver v. NY State Corr. Officers*, No. 99 CIV 9555, 2000 U.S. Dist. LEXIS 11531, at *7,  2000 WL 1154311, at *2 (S.D.N.Y. Aug. 14, 2000);

2.  *Sowell v. Weed*, No. 07-CV-6355(MAT), 2013 U.S. Dist. LEXIS 92866, at *17, 2013 WL 3324049, at *6 (W.D.N.Y. July 1, 2013);

3.  *Bass v. Grottoli*, No. 94 Civ. 3220 (MGC), 1995 U.S. Dist. LEXIS 13916, at *19, 1995 WL 565979 at *6,  (S.D.N.Y. Sept. 25, 1995);

4.  *Jamison v. Fischer*, No. 11 Civ. 4697 RJS, 2012 U.S. Dist. LEXIS 144307, at *14-15, 2012 WL 4767173, at *5 (S.D.N.Y. Sept. 27, 2012);

5.  *Chavis v. vonHagn*, No. 02-CV-0119, 2009 U.S. Dist. LEXIS 6871, at *198-99, 2009 WL 236060, at *68 (W.D.N.Y. Jan. 30, 2009);

6.  *Odom v. Calero*, No. 06 Civ. 15527, 2008 U.S. Dist. LEXIS 52408, at *16-20, 2008 WL 2735868, at *6-7 (S.D.N.Y. July 10, 2008);

7.  *Ramsey v. Goord*, No. 05-CV-47A, 2005 U.S. Dist. LEXIS 42953, at *18-20, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005);

8.  *Rodriguez v. Selsky*, No. 9:07-CV-0432, 2010 U.S. Dist. LEXIS 23813, 2010 WL 980273, at *6 (N.D.N.Y. Mar. 15, 2010);

9.      *Delgado v. Bezio*, No. 09 Civ. 6899 (LTS), 2011 U.S. Dist. LEXIS 51917, at *27, 2011 WL 1842294, at *9 (S.D.N.Y. May 9, 2011)

10.     *Bennett v. Fischer*, No. 9:09-CV-1236, 2010 U.S. Dist. LEXIS 139587, at *38-39, 2010 WL 5525368, at *12 (N.D.N.Y. Aug. 17, 2010)

11.     *Baez v. Harris*, No. 9:01-CV-807, 2007 U.S. Dist. LEXIS 8728, 2007 WL 446015, at *2 (N.D.N.Y. Feb. 7, 2007); and it is further

**ORDERED** that the Clerk correct the caption to list Defendant "Sup. Matsucell" as "Sup. Martuscello."

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: December 31, 2013
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

24