UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMEL KING,

                        Plaintiff,
                                                9:11-CV-1457
v.                                              (DNH/TWD)

C.O. MCINTYER, LT. MCDERMOTT,
C.O. STEVENS, SGT. YOUNG,
C.O. KANE, C.O. HESSLE,
C.O. CATLIN,
DEPT. C. MILLER,
COMM. BRIAN FISCHER,
SUP. MARTUSCELLO,

                        Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

JAMEL KING, 01-A-4949
Plaintiff pro se
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

HON. ERIC T. SCHNEIDERMAN            MICHAEL G. MCCARTIN, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

        This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Jamel

King alleges that an unnamed corrections officer asked Plaintiff to assault another inmate and that, based on Plaintiff's refusal to do so, the named Defendants retaliated against Plaintiff by: (1) issuing false misbehavior reports; (2) placing Plaintiff in keeplock; (3) finding Plaintiff guilty in disciplinary hearings; and (4) affirming Plaintiff's guilt on appeal. (Dkt. No. 9.) Currently pending before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 90.) For the reasons discussed below, I recommend that the motion be granted in part and denied in part.

## I.  BACKGROUND

Plaintiff alleges that in November 2010, while he was incarcerated at Coxsackie Correctional Facility, an unnamed non-party corrections officer asked Plaintiff to assault another inmate. (Dkt. No. 9 ¶ 7.) The officer stated, "We have someone who like [sic] to touch kids, and if you will like to beat him up I would not see nothing." *Id.* Plaintiff refused to assault the other inmate, telling the officer, "I'm not down with that and can you please not approach me with something like that." *Id.* The officer stated, "[I]f you're not going to beat him up, then you must be down with touching kids to [sic]." *Id.* Plaintiff replied to the officer, "No you have that wrong, you are the one that touch [sic] kids." *Id.* ¶ 8. The officer became upset and stated, "Your ass is going to cellblock C or D, the house of pain so pack your things and I will let my pals up their [sic] know that you are an asshole." *Id.*

Plaintiff alleges that Defendant Corrections Officers Jeffry Hoessle,[1] Patrick McIntyre,[2] Jerrad V. Catlin, and James Stevens issued several misbehavior reports to him over the next six months in retaliation for his refusal to assault the other inmate and for his complaints to prison officials about the alleged retaliation. (Dkt. No. 9.) Plaintiff alleges that Defendant McDermott retaliated against him and violated his due process rights during disciplinary hearings conducted as a result of the misbehavior reports. *Id.* He alleges that Defendant Sergeant Jason Young made threatening comments to him and that Defendant Corrections Officer Robert Kane separated him from other inmates. *Id.* ¶¶ 24, 29. Finally, Plaintiff alleges that Defendants Daniel F. Martuscello and Christopher Miller violated his constitutional rights by affirming the results of the disciplinary hearings. *Id.* ¶ 28. These incidents will be discussed in more detail in Section III, below.

Plaintiff filed his original complaint in this action on December 14, 2011. (Dkt. No. 1.) Plaintiff amended his complaint on January 5, 2012. (Dkt. No. 9.) Defendants filed a motion for partial summary judgment, which upon Defendants' request was considered as a motion to dismiss. (Dkt. Nos. 58, 68-69.) The Court granted the motion in part and denied it in part. (Dkt. No. 83.)

Defendants now move for summary judgment. (Dkt. No. 90.) Plaintiff has opposed the

---

[1] This Defendant's name is spelled "Hessle" in the caption. Defendant spells his surname "Hoessle" according to the declaration he filed in support of the motion for summary judgment. (Dkt. No. 90-7.) The Clerk is directed to amend the caption to reflect the correct spelling of Defendant's last name.

[2] This Defendant's name is spelled "McIntyer" in the caption. Defendant spells his surname "McIntyre" according to the declaration he filed in support of the motion for summary judgment. (Dkt. No. 90-10.) The Clerk is directed to amend the caption to reflect the correct spelling of Defendant's last name.

motion.  (Dkt. No. 99.)

## II.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist.  *Id*. at 273.  The nonmoving party must do more than "rest upon the mere allegations . . . of [the plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 & n.11 (1986).  Rather, a dispute regarding a material fact is *genuine* "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

## III.    ANALYSIS

Plaintiff claims that Defendants retaliated against him by issuing false misbehavior reports, placing him in keeplock, finding him guilty in disciplinary hearings, and affirming his

---

[3]    A fact is "material" only if it would have some effect on the outcome of the suit.  *Anderson*, 477 U.S. at 248.

4

guilt on appeal. (Dkt. No. 9.) The Court will discuss Plaintiff's claims and Defendants' motion incident by incident in chronological order.

### A. November 30, 2010, Misbehavior Report

#### 1. Facts

Plaintiff alleges that after he refused to assault the other inmate, he was moved to Cellblock D-3, where Defendant Hoessle placed him in keeplock. (Dkt. No 9 ¶ 9.) When Plaintiff asked Defendant Hoessle why he was in keeplock, Defendant Hoessle responded, "[B]ecause you wouldn't take care of business over in cellblock B-1 for my pal so you're [an] asshole." *Id.* Defendant Hoessle denies that he made that statement. (Dkt. No. 90-7 ¶ 9.) Indeed, he declares that he was not aware until April 2012 of Plaintiff's allegation that he had refused to assault another inmate. *Id.* ¶ 5.

The record shows that Defendant Hoessle issued a misbehavior report to Plaintiff on November 30, 2010. (Dkt. No. 90-18 at 4.) The report states that Defendant Hoessle

> observed [Plaintiff] enter the school with bulging pockets. I gave [him] a direct order to come back to my desk, he refused and kept walking. A second direct order was given. He complied. I then pat frisked [him] and found the following items of contraband. 5 cassette tapes, 1 tooth brush with case, 1 tooth paste, 1 Bare Necessity's magazine.

*Id.* Defendant Hoessle charged Plaintiff with smuggling, possessing items in an unauthorized area, and refusing a direct order. *Id.* Plaintiff was confined to keeplock as a result of the incident. *Id.* At his deposition, Plaintiff admitted that he had the tooth brush, tooth paste, magazine, and cassettes that morning and that he intended to give the cassette tapes to another

inmate.  (Dkt. No. 90-13 at 33:22-34:24.[4])

The record shows that Defendant McDermott conducted the disciplinary hearing on the misbehavior report on December 3, 2010.  (Dkt. No. 90-18 at 1.)  Plaintiff pleaded guilty to the charge of possessing items in an unauthorized area and not guilty to the charges of smuggling and refusing a direct order.  *Id.* at 3.  Defendant McDermott found Plaintiff not guilty of refusing a direct order and guilty of smuggling and possessing items in an unauthorized area.  *Id.* at 1.  Defendant McDermott sentenced Plaintiff to fourteen days of keeplock and loss of privileges.  *Id.*  Plaintiff served that keeplock sentence between November 30, 2010, and December 14, 2010.  *Id.*

Broadly construed, the complaint asserts retaliation claims against Defendants Hoessle and McDermott and a due process claim against Defendant McDermott as a result of this incident.

## 2.    Retaliation

Plaintiff alleges that Defendants Hoessle and McDermott retaliated against him for his refusal to assault the other inmate by issuing the misbehavior report and finding him guilty.  (Dkt. No. 9 ¶¶ 9-10.)  Defendants move for summary judgment of these claims.  (Dkt. No. 90-2 at 19-25.[5])  For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss these claims.

---

[4]    Citations to page numbers in Plaintiff's deposition transcript refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

[5]    Citations to page numbers in Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

Claims of retaliation find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). The Second Circuit has noted the following:

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To succeed on a retaliation claim under 42 U.S.C. § 1983, a plaintiff must show that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff – namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes*, 239 F.3d at 492). Once a plaintiff meets this burden, "[t]he burden then shifts to the defendant to show that the plaintiff would have received the same punishment even absent the retaliatory motivation. The defendant can meet this burden by demonstrating that there is no

dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (citations omitted).

Regarding the first element, Defendants argue that Plaintiff cannot establish that he was engaged in protected conduct because "[w]hile Plaintiff contends that he was issued the misbehavior report[] because he refused to beat up a child molester . . . , he can offer nothing to substantiate his allegation other than his own conclusory allegations." (Dkt. No. 90-2 at 22, citations omitted.) Plaintiff has offered more than "conclusory allegations." He has offered sworn testimony in the form of his verified complaint. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that the plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes . . . .") (citations omitted). The issue, though, is not whether Plaintiff has offered any evidence of his version of events. The issue is whether an alleged refusal to commit an illegal act constitutes protected conduct. The parties have not cited, and the Court has not found, any cases on point. However, it is logical to conclude that citizens have a right to refuse to commit crimes at the request of law enforcement officers. Therefore, the Court will assume for the purposes of this motion that Plaintiff has raised a triable issue of fact that he was engaged in protected conduct.

Regarding the second element, the Second Circuit defines "'adverse action' objectively, as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from

exercising . . . constitutional rights.'" *Gill*, 389 F.3d at 381 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003), *superseded by* 320 F.3d 346, 2003 U.S. App. LEXIS 13030, 2003 WL 360053 (2d Cir. Feb. 10, 2003)). Defendants implicitly concede that Plaintiff has shown adverse action. (*See* Dkt. No. 90-2 at 23, proceeding directly from "protected conduct" element to "causal connection" element.) Indeed, it is black-letter law that filing allegedly false misbehavior reports and imposing keeplock sentences constitute adverse action. *Gill*, 389 F.3d at 384.

Regarding the third element, Defendants argue that Plaintiff cannot establish a causal connection between the protected conduct and the adverse action. (Dkt. No. 90-2 at 23-25.) Several factors may be considered in determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002). Those factors include: (1) the temporal proximity between the protected activity and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant concerning his or her motivation. *Id*. "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

Regarding temporal proximity, Plaintiff alleges that he refused to assault the other inmate in November 2010. (Dkt. No. 9 ¶ 7.) Defendant Hoessle issued the misbehavior report on November 30, 2010. (Dkt. No. 90-18 at 4.) Defendant McDermott conducted the disciplinary hearing on December 3, 2010. *Id.* at 1. The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 555 (2d Cir. 2001)). Here, Defendant Hoessle issued the misbehavior report in the same month that

the alleged protected conduct occurred, and Defendant McDermott conducted the disciplinary hearing three days later. Therefore, Plaintiff has established temporal proximity between the alleged protected conduct and the adverse action.

Regarding Plaintiff's prior disciplinary record, Defendants assert that it was "dismal." (Dkt. No. 90-2 at 24.) Defendants are correct. Plaintiff was issued misbehavior reports and found guilty of multiple charges each year for the seven years preceding his alleged refusal to assault the other inmate. (Dkt. No. 90-15.) Indeed, Plaintiff admitted at his deposition that his disciplinary record was extensive because he was "out of control at one time." (Dkt. No. 90-13 at 24:1-5.) Therefore, Plaintiff has not established that he had a good disciplinary record before the alleged protected conduct.

Regarding vindication at the hearing on the matter, Plaintiff was found guilty of two of the three charges in the misbehavior report. (Dkt. No. 90-18 at 1.) Indeed, Plaintiff *pleaded guilty* to one of those charges. *Id.* at 3. Therefore, Plaintiff has not established that he was vindicated at the hearing.

Finally, Plaintiff alleges that Defendant Hoessle stated that he was placing Plaintiff on keeplock "because you wouldn't take care of business over in cellblock B-1 for my pal." (Dkt. No. 9 ¶ 9.) Defendant Hoessle denies making that statement. (Dkt. No. 90-7 ¶ 9.) Neither the complaint nor Plaintiff's opposition to the motion for summary judgment assert any statements by Defendant McDermott concerning his motivation at the disciplinary hearing on this matter. (Dkt. No. 9 ¶¶ 9-10; Dkt. No. 99 ¶¶ 24-29.) Therefore, Plaintiff has raised a triable issue of fact as to this factor regarding Defendant Hoessle, but not regarding Defendant McDermott.

Accordingly, Plaintiff has raised a triable issue regarding two of the causal connection

factors regarding Defendant Hoessle.  Given the skepticism with which retaliation claims must be viewed, it is unlikely that this is sufficient to establish a causal connection.  But even assuming that Plaintiff has established a causal connection, this would simply shift the burden to Defendants to demonstrate "that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'"  *Gayle*, 313 F.3d at 681 (quoting *Hynes v. Squillace*, 143 F.3d 653, 657 (2d Cir. 1998)).  Defendants have met that burden.  Plaintiff pleaded guilty to the charge of possessing items in an unauthorized area (Dkt. No. 90-18 at 3) and admitted at his deposition that he intended to pass the cassette tapes to another inmate.  (Dkt. No. 90-13 at 34:14-24.)   The prison rule against smuggling states that "[a]n inmate shall not . . . attempt to smuggle . . . any item . . . from one area to another."  N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(15)(i) (2014).  Transferring items that are classified as contraband–such as items carried by an inmate into an unauthorized area–constitutes smuggling under the rule.  *See Farid v. Ellen*, 593 F.3d 233, 237 (2d Cir. 2010) (discussing the connection between Rule 113.23–the "catch-all" contraband provision of the prison rules–and the rules prohibiting smuggling).  Plaintiff has, accordingly, conceded that he was guilty of the two most serious charges in the misbehavior report.  Thus, Defendants have met their burden of showing the Plaintiff would have received the same punishment absent a retaliatory motive.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment of this claim.

### 3.  Procedural Due Process

Plaintiff alleges that Defendant McDermott violated his right to due process during the December 3, 2010, disciplinary hearing.  (Dkt. No. 9.)  Defendants move for summary judgment of this claim.  (Dkt. No. 90-2 at 25-27.)  For the reasons discussed below, I recommend that the

Court grant Defendants' motion and dismiss this claim.

Due process is satisfied if an inmate facing disciplinary charges receives (1) advanced written notice of the charges against him; (2) a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; (3) a fair and impartial hearing officer; and (4) a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004).

Here, Plaintiff received advanced written notice of the charges against him. (Dkt. No. 90-18 at 3.) He did not request any witnesses. *Id.* Defendants were not able to locate the audio recording of the disciplinary hearing (Dkt. No. 90-12 ¶ 8), so the Court cannot determine whether Plaintiff was afforded a reasonable opportunity to present documentary evidence. Plaintiff received a written statement of Defendant McDermott's disposition, which stated that Defendant McDermott relied on Defendant Hoessle's misbehavior report and Plaintiff's plea of guilty to the charge of possessing items in an unauthorized area and imposed the punishment on Plaintiff to "impress upon [him] not to bring items into the school building that are not authorized." (Dkt. No. 90-18 at 2.)

Regarding the issue of whether Defendant McDermott was a fair and impartial hearing officer, it is well settled "that 'the degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally.'" *Espinal v. Goord*, 180 F. Supp. 2d 532, 539 (S.D.N.Y. 2002) (quoting *Francis v.. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)). Due process in this context requires only that the hearing officer's decision not be "arbitrary." *Wolff*, 418 U.S. at 571. A decision is not "arbitrary" if it is supported by "some evidence."

*Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  "This standard is extremely tolerant and is satisfied if 'there is *any* evidence in the record that supports' the disciplinary ruling."  *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (emphasis in original) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).  Prison officials acting as hearing officers are entitled to a rebuttable presumption that they are unbiased.  *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996).

Here, evidence in the record supports Defendant McDermott's ruling.  Defendant Hoessle's misbehavior report described his observation that Plaintiff initially refused a direct order to return to his desk and Defendant Hoessle's discovery of contraband on Plaintiff's person.  (Dkt. No. 90-18 at 4.)  Plaintiff admitted that he had taken the items into the school building.  *Id.* at 3.  Based on this evidence, it was not arbitrary for Defendant McDermott to find Plaintiff guilty.  Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this due process claim against Defendant McDermott.

### B.     December 2, 2010, Misbehavior Report

#### 1.     Facts

The record shows that on December 2, 2010, Plaintiff was issued another misbehavior report by a non-defendant officer.  (Dkt. No. 90-33 at 4.)  Plaintiff was charged with refusing two direct orders, interfering, blocking visibility into his cell, and delaying the evening count.  *Id.* at 3.

The record shows that Defendant McDermott conducted the disciplinary hearing on the misbehavior report on December 13, 2010.  (Dkt. No. 90-33 at 1.)  Plaintiff pleaded guilty to the visibility obstruction charge and not guilty to the other charges.  *Id.* at 3.  Defendant McDermott

found Plaintiff guilty of the visibility obstruction charge and not guilty of the other charges. *Id.* at 1. Defendant McDermott sentenced Plaintiff to fifteen days of keeplock and loss of privileges, suspended and deferred sixty days. *Id.*

Broadly construed, the complaint asserts retaliation and due process claims against Defendant McDermott as a result of this incident.

### 2. Retaliation

Plaintiff alleges that Defendant McDermott retaliated against him for his refusal to assault the other inmate by finding him guilty after the disciplinary hearing. (Dkt. No. 9.) Defendants move for summary judgment of this claim. (Dkt. No. 90-2 at 19-25.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss this claim.[6]

As discussed above, Plaintiff has raised a triable issue of fact that he engaged in protected conduct by refusing to assault the other inmate. As discussed above, imposing a keeplock sentence constitutes adverse action. The issue, then is whether Plaintiff has raised a triable issue of fact that Defendant McDermott's adverse action was causally connected to Plaintiff's protected conduct.

As discussed above, courts consider four factors in determining whether there was a causal connection between protected conduct and an adverse action. *Baskerville*, 224 F. Supp. 2d at 732. As with the claim discussed above, Plaintiff has established temporal proximity between his protected conduct and the adverse action because he refused to assault the other inmate in November 2010 and the hearing at issue here occurred the next month. As discussed

---

[6] Defendants make the same arguments for each of Plaintiff's retaliation claims. Having addressed those arguments explicitly in Section III(A)(2), the Court will not repeat the arguments in the subsequent sections.

above, Plaintiff has not established that he had a good disciplinary record before the alleged

protected conduct.  Likewise, Plaintiff has not established that he was vindicated at the hearing

because he, in fact, pleaded guilty to one charge.  And finally, as with the claim discussed above,

Plaintiff has not alleged that Defendant McDermott made any statements concerning his

motivation.  (*See* Dkt. No. 9; Dkt. No. 99.)  Thus, the only factor weighing in favor of a finding

of a causal connection is the temporal proximity factor.

The Second Circuit has held that where "timing is the only basis for a claim of retaliation

. . . an inference of retaliation does not arise," particularly where other adverse actions preceded

the protected conduct.  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).[7]

Here, timing is the only basis for Plaintiff's retaliation claim.  Moreover, Plaintiff's disciplinary

record shows that he was routinely subject to disciplinary sanctions for years before the alleged

protected conduct.  (Dkt. No. 90-15.)  Thus, other adverse actions preceded the protected

conduct.  Therefore, I recommend that the Court grant Defendants' motion for summary

judgment and dismiss this claim.

3.    Due Process

Plaintiff alleges that Defendant McDermott violated his due process rights during the

disciplinary hearing.  (Dkt. No. 9.)  Defendants move for summary judgment of this claim.  (Dkt.

No. 90-2 at 25-27.)  For the reasons discussed below, I recommend that the Court grant

Defendants' motion and dismiss this claim.

---

[7]    *Slattery* was an employment law case.  The Second Circuit routinely cites to
employment cases when discussing retaliation in the prison law context.  *See e.g. Espinal*, 558
F.3d at 129 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).  Thus, it is
appropriate to apply the *Slattery* rule here.

Plaintiff received advanced written notice of the charges against him. (Dkt. No. 90-33 at 3.) He did not request any witnesses. *Id.* Plaintiff received a written statement of Defendant McDermott's disposition, which stated that Defendant McDermott relied on the misbehavior report and Plaintiff's plea of guilty to the visibility obstruction charge in reaching his disposition and imposed the punishment on Plaintiff to "impress upon [him] not to block your cell door window." (Dkt. No. 90-33 at 2.)

Regarding the issue of whether Defendant McDermott was a fair and impartial hearing officer, evidence in the record supports Defendant McDermott's ruling. Most importantly, Plaintiff *pleaded guilty* to the only charge of which Defendant McDermott found him guilty. (Dkt. No. 90-33 at 1, 3.) Indeed, Plaintiff admits in his opposition to the motion for summary judgment that he "did block visibility," although he states that he did so "because he was showing a female officer respect because after he worked out he was washing up." (Dkt. No. 99 ¶ 34.) Based on this evidence, it was not arbitrary for Defendant McDermott to find Plaintiff guilty. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this due process claim against Defendant McDermott.

### C. December 20, 2010, Misbehavior Reports

#### 1. Facts

Plaintiff alleges he was moved to Cellblock C-2 after the December 2, 2010, misbehavior report. (Dkt. No. 9 ¶ 11.) He alleges that Defendant McIntyre then started harassing him. (Dkt. No. 9 ¶ 12.) Plaintiff alleges that he wrote a complaint to Defendant Brian Fischer regarding

Defendant McIntyre's conduct.[8]  *Id.*  Plaintiff alleges that Defendant McIntyre retaliated against him for that complaint by issuing three false misbehavior reports.  (Dkt. No. 9 ¶ 13.)  From the record, it appears that two of these misbehavior reports were issued on December 30, 2010, and that the third was issued on January 3, 2011.  (Dkt. No. 90-19 at 4-5; Dkt. No. 90-21 at 4.)  This section will address the December 30, 2010, reports.

The record shows that Defendant McIntyre issued two misbehavior reports against Plaintiff on December 30, 2010.  (Dkt. No. 90-19 at 4-5.)  In the first, Defendant McIntyre stated that Plaintiff had exchanged an item from his kosher meal tray for a chicken patty from another inmate's regular meal tray.  *Id*. at 4.  Defendant McIntyre charged Plaintiff with unauthorized exchange and violating mess hall serving policies.  *Id.*  In the second misbehavior report, Defendant McIntyre stated that Plaintiff asked him to "exchange an unknown item with an inmate on the opposite side of the division."  *Id.* at 5.  The report states that after Defendant McIntyre refused, he observed Plaintiff hand off the unknown item.  *Id.*  Defendant McIntyre charged Plaintiff with refusing a direct order and unauthorized exchange.  *Id.*

Plaintiff alleges that Defendant McDermott conducted the disciplinary hearing on the misbehavior reports.  (Dkt. No. 9 ¶¶ 14-16.)  In opposition to the motion for summary judgment, Plaintiff asserts that a non-defendant lieutenant conducted a hearing on one of the misbehavior reports, but that Defendant McDermott conducted the other.  (Dkt. No. 99 ¶ 50.)  However, the record shows that the non-defendant lieutenant conducted the disciplinary hearing on both of the

---

[8]      Defendants assert that "Plaintiff never produced his letters of complaint[] to Defendants during the course of this litigation."  (Dkt. No. 90-3 ¶ 14.)  Plaintiff asserts that he gave the letters to a hearing officer on January 5, 2011, and that the officer confiscated them.  (Dkt. No. 99 ¶ 14.)  Given the special solicitude that must be given to pro se plaintiffs, the Court has assumed that Plaintiff actually wrote to Defendant Fischer.

misbehavior reports.[9]  (Dkt. No. 90-15 at 5; Dkt. No. 90-19 at 1.)  The hearing was conducted on

January 12, 2011.  *Id*.  Plaintiff pleaded not guilty to all of the charges.  (Dkt. No. 90-19 at 3.)

The lieutenant found Plaintiff guilty of all four charges and sentenced him to fifteen days of

keeplock and loss of privileges, suspended and deferred for ninety days.  *Id.* at 1.

Plaintiff alleges that he appealed the finding of guilt to Defendant Martuscello and

Defendant Miller.  (Dkt. No. 9 ¶ 16.)  According to the complaint, Defendant Martuscello and

Defendant Miller affirmed Defendant McDermott's finding of guilt.  *Id.*  The record shows that

Defendant Miller affirmed the finding of guilt.  (Dkt. No. 90-15 at 5.)

Broadly construed, the complaint asserts a retaliation claim against Defendant McIntyre

and a due process claim against Defendant Miller as a result of this incident.

2.    Retaliation

Plaintiff alleges that Defendant McIntyre retaliated against him for writing to Defendant

Fischer by issuing the misbehavior report.  (Dkt. No. 9.)  Defendants move for summary

judgment of this claim.  (Dkt. No. 90-2 at 19-25.)  For the reasons discussed below, I recommend

that the Court grant Defendants' motion and dismiss this claim.

The filing of a grievance against prison officials is constitutionally protected conduct.

*Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003);  *Graham v. Henderson,* 89 F.3d 75, 80 (2d

Cir. 1996).  "Complaining to a superior officer about a subordinate officer's misbehavior, while

not equivalent to the filing of a grievance, is conduct at least arguably protected by the First

Amendment."  *Jones v. Harris*, 665 F. Supp. 2d 384, 398 (S.D.N.Y. 2009).  As discussed above,

---

[9]    Plaintiff alleges that Defendant McDermott made comments indicating retaliatory animus during this hearing.  (Dkt. No. 9 ¶¶ 14-15.)  However, it is clear from the record that he did not conduct any part of the hearing.

filing a misbehavior report constitutes an adverse action. *Gill*, 389 F.3d at 384. The issue, then, is whether Plaintiff has established a causal connection between his protected conduct and Defendant McIntyre's adverse action.

As discussed above, courts consider four factors in determining whether there was a causal connection between protected conduct and an adverse action. *Baskerville*, 224 F. Supp. 2d at 732. First, regarding temporal proximity, Plaintiff alleges that he wrote a letter of complaint to Defendant Fischer sometime after December 2, 2010. (Dkt. No. 9 ¶¶ 11-12.) Defendant McIntyre issued the misbehavior reports on December 30, 2010. (Dkt. No. 90-19 at 4-5.) Thus, Plaintiff has raised a triable issue of fact as to temporal proximity. Second, as discussed above, Plaintiff cannot establish that he had a good disciplinary record before writing the letter of complaint. (Dkt. No. 90-15.) Third, Plaintiff was not vindicated at the disciplinary hearing. (Dkt. No. 90-19 at 1.) Fourth, regarding statements by Defendant McIntyre regarding his motivation, Plaintiff has alleged only that Defendant McIntyre was "upset" and "retaliated." (Dkt. No. 99 ¶ 40.) He has not alleged any specific statements by Defendant McIntyre. Thus, timing appears to be the only factor supporting a finding of causal connection. As discussed above, timing alone is insufficient to support a finding of causal connection. *Slattery*, 248 F.3d at 95. Thus, Plaintiff has not raised a triable issue of fact regarding the causal connection element of his retaliation claim against Defendant McIntyre. Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

### 3. Due Process

Plaintiff alleges that Defendant Miller is personally responsible for the alleged violation of due process rights at the disciplinary hearing because he affirmed the finding on appeal. (Dkt.

No. 9.)  Defendants move for summary judgment of this claim.  (Dkt. No. 90-2 at 16-18, 25-28.)

Defendants argue that Defendant Miller was not personally involved, that there was no violation

of due process on the merits, and that Defendant Miller is entitled to qualified immunity.  *Id.*  For

the reasons discussed below, I recommend that the Court find that Defendant Miller was

personally involved, find that there was no due process violation on the merits, decline to address

the qualified immunity argument, and dismiss this claim against Defendant Miller.

a.    *Personal Involvement*

Defendants argue that Defendant Miller was not personally involved in the alleged

constitutional violation.  (Dkt. No. 90-2 at 16-18.)  For the reasons discussed below, I

recommend that the Court reject this argument.

Under Second Circuit precedent, "'personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v.

Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885

(2d Cir. 1991)).  In order to prevail on a § 1983 cause of action against an individual, a plaintiff

must show some "tangible connection" between the unlawful conduct and the defendant.  *Bass v.

Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  If the defendant is a supervisory official, a mere

linkage to the unlawful conduct through the prison chain of command (i.e., under the doctrine of

respondeat superior) is insufficient to show his or her personal involvement in that unlawful

conduct.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431,

435 (2d Cir. 2003) (per curiam); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210

(2d Cir. 1985) (per curiam).  In other words, supervisory officials may not be held liable merely

because they held positions of authority.  *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)

(citations omitted). Rather, supervisory personnel may be considered personally involved if they: (1) directly participated in the violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon*, 58 F.3d at 873 (citations omitted).[10]

Earlier in this litigation, Defendants moved to dismiss the claims against Defendant Miller for lack of personal involvement. (Dkt. No. 58-3 at 5-7.[11]) The Court denied that motion, noting that, while district courts are split on the issue, the better view is that affirming a disciplinary decision constitutes personal involvement. (Dkt. No. 80 at 18-20; Dkt. No. 83.) Defendants have not addressed that aspect of the Court's earlier decision. (Dkt. No. 90-2 at 16-18.) For instance, Defendants have not argued that the Court should change course and adopt the

---

[10]     In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court ruled that where the underlying constitutional claim is a claim of intentional discrimination, a supervisory official's liability must be judged by the official's purpose rather than the official's knowledge of subordinates' actions or policies. The Second Circuit has not yet issued a decision discussing *Iqbal*'s effect on the *Colon* categories. Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories. *See Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases). The Second Circuit itself has noted that "*Iqbal* has . . . engendered conflict within our Circuit about the continuing vitality of the supervisory liability test set forth in *Colon*." *Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Second Circuit declined to address the issue in *Reynolds*, however, and has not addressed it since that time. I will assume for the purposes of this motion that *Colon* remains good law.

[11]     Citations to page numbers in Defendants' earlier memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

view of the district courts holding that affirming a disciplinary decision is *not* sufficient to constitute personal involvement. *Id.* Instead, Defendants' personal involvement argument centers on distinguishing the case of *Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013). That case deals with a personal involvement issue–the receipt of letters of complaint–that is different than the issue presented here regarding Defendant Miller. Because Defendants have not advanced any argument sufficient to alter the Court's earlier ruling, I recommend that the Court decline to dismiss the due process claim against Defendant Miller on personal involvement grounds.

                b.     *Merits*

Defendants argue that Plaintiff's due process rights were not violated during the January 12, 2011, disciplinary hearing and that, accordingly, Defendant Miller cannot be held liable for affirming the decision. (Dkt. No. 90-2 at 25-27.) For the reasons discussed below, I recommend that the Court grant Defendants' motion for summary judgment on this ground and dismiss this claim against Defendant Miller.

Plaintiff received advanced written notice of the claims against him. (Dkt. No. 90-19 at 3.) Plaintiff received a written statement of the disposition, which stated that the hearing officer relied on the misbehavior reports and Plaintiff's testimony in reaching his disposition and imposed the punishment "to serve as a deterrent for future misconduct." *Id.* at 2. Plaintiff did not request any witnesses, not even the inmate with whom he exchanged food and the inmate to whom he exchanged the "unknown item." *Id.* at 3. At the hearing Plaintiff asserted that he had requested a copy of the video from the date in question. (Dkt. No. 90-20 at 2.) The hearing officer stated that he had "no indication" of that request. *Id.* Plaintiff stated that "the video I

requested, would show that–I didn't pass nothing on." *Id.* at 5. Testimony from the other inmates presumably could have served as an adequate proof for this assertion, but Plaintiff did not request it. Thus, he cannot raise a triable issue of fact that he was prejudiced by the denial of the video evidence.

Regarding the issue of whether the non-defendant lieutenant was a fair and impartial hearing officer, evidence in the record supports his ruling. Specifically, he had the misbehavior reports and was present to judge Plaintiff's credibility in the hearing room. Thus, I recommend that the Court find that the hearing officer did not violate Plaintiff's due process rights. Accordingly, Defendant Miller, who simply affirmed the decision, cannot be held liable and I recommend that the Court grant Defendants' motion and dismiss this claim against Defendant Miller.

Because I have recommended that the Court grant the motion for summary judgment of this claim on the merits, I decline to address Defendants' qualified immunity argument.

### D.    January 3, 2011, Misbehavior Report

#### 1.    Facts

The record shows that Defendant McIntyre issued another misbehavior report against Plaintiff on January 3, 2011. (Dkt. No. 90-21 at 4.) The report stated that Defendant McIntyre, while walking behind Plaintiff from the C Block to the school, noticed that Plaintiff's rear pocket was bulging. *Id.* Defendant McIntyre ordered Plaintiff to take all items out of his pockets and place them on the desk. *Id.* After Plaintiff did so, Defendant McIntyre frisked Plaintiff and found matches, a pen, and some pictures still in his pockets. *Id.* The report states that Plaintiff then became verbally abusive and threatened to write Defendant McIntyre up. *Id.* Despite

23

Defendant McIntyre's order to be quiet, Plaintiff yelled that Defendant McIntyre was harassing him. *Id.* Defendant McIntyre charged Plaintiff with refusing to obey a direct order, threats, failure to comply with frisk procedures, possessing articles in an unauthorized area, and harassment. *Id.* Plaintiff pleaded not guilty to all of the charges. *Id.* at 3.

The record shows that Defendant McDermott conducted the disciplinary hearing on the misbehavior report on January 5, 2011. (Dkt. No. 90-21 at 1.) During his testimony, Plaintiff admitted that he had pictures in his pocket. (Dkt. No. 90-22 at 4-5.) Defendant McDermott found Plaintiff not guilty of threats and guilty of possessing property in an unauthorized area, harassment, refusing a direct order, and failing to comply with frisk procedures. (Dkt. No. 90-21 at 1.) Defendant McDermott sentenced Plaintiff to fifteen days of keeplock and loss of privileges, along with fifteen days that had previously been deferred. *Id.* Plaintiff served the keeplock sentence from January 3, 2011, through February 2, 2011. *Id.*

Broadly construed, the complaint asserts retaliation claims against Defendants McIntyre and McDermott and a due process claim against Defendant McDermott.

2.     Retaliation

Plaintiff claims that Defendants McIntyre and McDermott retaliated against him for his complaint to Defendant Fischer by issuing the misbehavior report and finding him guilty. (Dkt. No. 9.) Defendants move for summary judgment of these claims. (Dkt. No. 90-2 at 19-25.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss these claims.

Regarding the first element of Plaintiff's retaliation claim, as discussed above, writing a letter of complaint to a superior officer is at least arguably protected conduct. *Jones*, 665 F.

Supp. 2d at 398.  Regarding the second element, as discussed above, both filing a misbehavior report and imposing a keeplock sentence constitute adverse action.  *Gill*, 389 F.3d at 384.  Thus, the issue is whether Plaintiff has raised a triable issue of fact that there was a causal connection between the protected conduct and the adverse action.

As discussed above, courts consider four factors in determining whether there was a causal connection between protected conduct and adverse action.  *Baskerville*, 224 F. Supp. 2d at 732.  First, as with the claims discussed above, Plaintiff has established temporal proximity.  Plaintiff alleges that he wrote a letter of complaint to Defendant Fischer sometime after December 2, 2010.  (Dkt. No. 9 ¶¶ 11-12.)  The record shows that Defendant McIntyre issued the misbehavior report on January 3, 2011, and that Defendant McDermott conducted the disciplinary hearing on January 5, 2011.  (Dkt. No. 90-21 at 1, 4.)  Thus, Plaintiff has established temporal proximity.  Second, as noted above, Plaintiff has not established that he had a good disciplinary record before the alleged protected conduct.  Third, Plaintiff was not vindicated at the hearing on the matter.  (Dkt. No. 90-21 at 1.)  Finally, Plaintiff does not allege any specific statements by either Defendant McIntyre or Defendant McDermott connecting his letter of complaint to Defendant Fischer to this misbehavior report and disciplinary hearing.  (Dkt. No. 9; Dkt. No. 99.)  Thus, again, timing appears to be the only factor supporting a finding of causal connection.  As established above, timing alone is insufficient.  *Slattery*, 248 F.3d at 95.  Thus, Plaintiff has not raised a triable issue of fact regarding the causal connection of his retaliation claims against Defendants McIntyre and McDermott.  Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

        3.      <u>Due Process</u>

Plaintiff claims that Defendant McDermott violated his right to due process during the disciplinary hearing. (Dkt. No. 9.) Defendants move for summary judgment of this claim. (Dkt. No. 90-2 at 25-27.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss this claim.

Plaintiff received advanced written notice of the charges against him. (Dkt. No. 90-21 at 3.) He did not request any witnesses. *Id.* Plaintiff received a written statement of Defendant McDermott's disposition, which stated that Defendant McDermott relied on the misbehavior report in reaching his disposition and imposed the punishment "[t]o impress upon this inmate not to act in this manner." *Id.* at 2.

Regarding the issue of whether Defendant McDermott was a fair and impartial hearing officer, evidence in the record supports Defendant McDermott's ruling. Specifically, Plaintiff admitted in his hearing testimony that he had pictures in his pocket. (Dkt. No. 90-22 at 4-5.) Accordingly, Defendant McDermott's decision was not arbitrary. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this claim.

### E.      January 21, 2011, Misbehavior Report

#### 1.      Facts

Plaintiff alleges that on or about January 12, 2011, he wrote to Defendant Fischer complaining about the "constant harassment" by the staff at Coxsackie Correctional Facility. (Dkt. No. 9 ¶ 16.)

The record shows that a non-defendant correctional officer issued two misbehavior reports to Plaintiff on January 21, 2010. (Dkt. No. 90-23 at 5-6.) In the first, the officer charged Plaintiff with disobeying a direct order and creating a disturbance because he refused to stop

yelling across the tier to another inmate. *Id.* at 5. In the second, issued a little more than an hour later, the officer charged Plaintiff with unauthorized exchange, lying to staff, and disobeying a direct order after seeing Plaintiff exchange stamps for tobacco via a "string-like line" between Plaintiff's cell and another inmate's cell. *Id.* at 6. Plaintiff pleaded not guilty to all charges. *Id.* at 3.

Defendant McDermott conducted the disciplinary hearing on the misbehavior reports on January 25, 2011. (Dkt. No. 90-23 at 1.) Defendant McDermott found Plaintiff guilty of all charges and sentenced him to forty-five days of keeplock and loss of privileges. *Id.* Plaintiff served the keeplock sentence from February 2, 2011, to March 19, 2011. *Id.* Defendant Miller affirmed the decision. (Dkt. No. 90-15 at 5-6.)

Broadly construed, the complaint asserts retaliation and due process claims against Defendant McDermott and a due process claim against Defendant Miller as a result of this incident.

2.      Retaliation

Plaintiff alleges that Defendant McDermott retaliated against him for his letter of complaint to Defendant Fischer by finding him guilty at the disciplinary hearing. (Dkt. No. 9.) Defendants move for summary judgment of this claim. (Dkt. No. 90-2 at 19-25.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss this claim.

Regarding the first element of Plaintiff's retaliation claim, as discussed above, writing a letter of complaint to a superior officer is at least arguably protected conduct. *Jones*, 665 F. Supp. 2d at 398. Regarding the second element, as discussed above, imposing a keeplock sentence constitutes adverse action. *Gill*, 389 F.3d at 384. Thus, the issue is whether Plaintiff

has raised a triable issue of fact that there was a causal connection between the protected conduct and the adverse action.

As noted above, courts consider four factors when determining the causal connection issue. *Baskerville*, 224 F Supp. 2d at 732. Regarding the first factor, Plaintiff has raised a triable issue of fact as to temporal proximity by alleging that he wrote to Defendant Fischer on January 12, 2011, and that Defendant McDermott conducted the disciplinary hearing on January 25, 2011. (Dkt. No. 9 ¶ 16; Dkt. No. 90-23 at 1.) Regarding the second factor, Plaintiff has not established that he had a good disciplinary record before the alleged protected conduct. (Dkt. No. 90-15.) Regarding the third factor, Plaintiff was not vindicated at the hearing on the matter or on appeal. (Dkt. No. 90-15 at 5-6; 90-23 at 1.) Regarding the fourth factor, Plaintiff has not alleged that Defendant McDermott made any comments regarding his motivation at the January 25, 2011, disciplinary hearing. (Dkt. No. 9; Dkt. No. 99 ¶¶ 64-73.) Thus, timing appears to be the only factor supporting a finding of causal connection. As previously discussed, timing alone is insufficient to support such a finding. *Slattery*, 248 F.3d at 95. Thus, Plaintiff has not raised a triable issue of fact regarding the causal connection element of his retaliation claim against Defendant McDermott. Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

### 3. Due Process

Plaintiff alleges that Defendants McDermott and Miller violated his due process rights by finding him guilty at the disciplinary hearing and affirming that decision. (Dkt. No. 9.) Defendants move for summary judgment of these claims. (Dkt. No. 90-2 at 25-27.) For the reasons discussed below, I recommend that the Court grant the motion and dismiss these claims.

Plaintiff received advanced written notice of the claims against him. (Dkt. No. 90-23 at 3.) Plaintiff requested that Inmate Bush testify, and that request was granted.[12] *Id.* Plaintiff received a written statement of the disposition, in which Defendant McDermott stated that he relied on the misbehavior reports in reaching his decision and that he imposed the punishment "[t]o impress upon this inmate that this type of misconduct will not be tolerated." *Id.* at 2.

Regarding the issue of whether Defendant McDermott was a fair and impartial hearing officer, evidence in the record supports his ruling. Defendant McDermott had the misbehavior reports, Inmate Bush's testimony, and Plaintiff's testimony. (Dkt. No. 90-24.) He was able to weigh the credibility of the witnesses who appeared before him. Accordingly, his decision was not arbitrary. Thus, there is no triable issue of fact that he violated Plaintiff's due process rights during his conduct of the hearing or that Defendant Miller violated Plaintiff's due process rights by affirming the decision. Therefore, I recommend that the Court grant Defendants' motion and dismiss these claims.

**F.  March 28, 2011, Misbehavior Report**

  1.  Facts

Plaintiff alleges that on or about March 27, 2011, he wrote another letter to Defendant Fischer complaining about harassment. (Dkt. No. 9 ¶ 17.) Plaintiff alleges that after writing the letter, he was released from keeplock confinement and moved back to Cellblock C-3 where he "became a target of harassment" by Defendant McIntyre. (Dkt. No. 9 ¶ 18.)

Plaintiff alleges that on or about March 28, 2011, he returned to his cell block from the

_____

[12]      Unfortunately, the transcript of the majority of Inmate Bush's testimony states that it was inaudible on the audio tape. (Dkt. No. 90-24 at 6-8.)

prison law library.  (Dkt. No. 9 ¶ 19.)   Defendant McIntyre saw Plaintiff and stated to Defendant

Catlin, "King like[]s to write complaint[]s against officer[]s in Coxsackie and you know what we

do to people like him."  *Id.*  Defendant Catlin smiled and stated, "[Y]es, we do like we always

do, jump on them and write tickets."  *Id.*  Defendant Catlin declares that this exchange "never

happened and is fabricated."  (Dkt. No. 90-5 ¶ 6.)

Plaintiff alleges that on or about March 28, 2011, Defendant Catlin wrote Plaintiff a false

misbehavior report and stated, "[T]his is only the beginning, you will be seeing move [sic] from

my pals soon."  (Dkt. No. 9 ¶ 20.)  The record shows that in the report, Defendant Catlin stated

that when he instructed Plaintiff to stop smoking in his cell, Plaintiff said "You caught me.  I

may as well finish my smoke."  (Dkt. No. 90-25 at 4.)  Defendant Catlin charged Plaintiff with

disobeying a direct order and smoking.  *Id.*  Defendant Catlin declares that he issued the

misbehavior report because he witnessed Plaintiff engaging in prohibited conduct, not in

retaliation for protected conduct.  (Dkt. No. 90-5 ¶ 7.)  Indeed, he declares that he was not aware

at the time that Plaintiff had written any letters of complaint.  *Id.*  Plaintiff pleaded not guilty to

both charges.  (Dkt. No. 90-25 at 3.)

The record shows that Defendant McDermott conducted the disciplinary hearing on the

misbehavior report on April 6, 2011.  (Dkt. No. 90-25 at 1.)  Plaintiff alleges that he explained to

Defendant McDermott that the misbehavior report was motivated by his complaints against staff.

(Dkt. No. 9 ¶ 23.)  Plaintiff alleges that he explained to Defendant McDermott that he had been

threatened in response to his complaints.  *Id.*  Plaintiff testified that he was not smoking and that

the misbehavior report was false.  (Dkt. No. 90-26 at 3-4.)  Defendant McDermott found Plaintiff

guilty and sentenced him to thirty days in keeplock, suspended and deferred, plus loss of

privileges. (Dkt. No. 90-25 at 1.) Plaintiff alleges that when the disciplinary hearing was over, Defendant McDermott turned off the tape recorder and stated, "[Y]ou picked the wrong one to write a complaint against, Officer McInty[re] is my brother in law." (Dkt. No. 9 ¶ 23.)

Broadly construed, the complaint asserts retaliation claims against Defendants Catlin and McDermott and a due process claim against Defendant McDermott as a result of this incident.

## 2.    Retaliation

Plaintiff claims that Defendants Catlin and McDermott retaliated against him for his letters of complaint to Defendant Fischer by issuing the misbehavior report and finding him guilty. (Dkt. No. 9.) Defendants move for summary judgment of these claims. (Dkt. No. 90-2 at 19-25.) For the reasons discussed below, I recommend that the Court deny Defendants' motion.

Regarding the first element of Plaintiff's retaliation claim, complaining to a superior officer is at least arguably protected conduct. *Jones*, 665 F. Supp. 2d at 398. Regarding the second element, both filing a misbehavior report and imposing a keeplock sentence constitute adverse action. *Gill*, 389 F.3d at 384. The issue, then, is whether Plaintiff has raised a triable issue of fact that there was a causal connection between the protected conduct and the adverse action.

As with the claims discussed above, Plaintiff has established temporal proximity. Plaintiff alleges that he wrote a letter of complaint to Defendant Fischer on March 27, 2011. (Dkt. No. 9 ¶ 17.) Defendant Catlin issued the misbehavior report on March 28, 2011. (Dkt. No. 90-25 at 4.) Defendant McDermott conducted the disciplinary hearing on April 6, 2011. *Id.* at 1. Thus, Plaintiff has established temporal proximity. Regarding the second factor, as reviewed above, Plaintiff has not established that he had a good disciplinary record before the alleged

protected conduct.  Regarding the third factor, Plaintiff was not vindicated at the hearing on the matter.  *Id.*

Regarding the fourth factor, Plaintiff alleges statements by both Defendant Catlin and Defendant McDermott suggesting that they had retaliatory motives for their actions.  Plaintiff alleges that Defendant Catlin said that "we always . . . write tickets" on inmates who write complaints.  (Dkt. No. 9 ¶ 19.)  Defendant Catlin declares that he never made that statement (Dkt. No. 90-5 ¶ 6)  Plaintiff alleges that Defendant McDermott said, "[Y]ou picked the wrong one to write a complaint against, Officer McInty[re] is my brother in law."  *Id.* ¶ 23.  Defendant McDermott declares that he "never retaliated against Mr. King for filing grievances or letters of complaint."  (Dkt. No. 90-9 ¶ 6.)  Defendants argue that Plaintiff's allegations about their statements are "baseless" because they have denied making those statements.  (Dkt. No. 90-2 at 24-25.)  The parties' contrasting version of events raises credibility issues that cannot be resolved on a motion for summary judgment.  "Credibility determinations . . . are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255; *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").  Thus, Plaintiff has raised a triable issue of fact regarding the fourth factor.

Having raised a triable issue of fact as to two of the causal connection factors, the burden shifts to Defendants to show "that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report."  *Gayle*, 313 F.3d at 681 (citations omitted).  Unlike the November 30, 2010, misbehavior report discussed in Section III(A)(2) above, the parties dispute whether Plaintiff committed the conduct charged in

the misbehavior report. Unlike situations in which Plaintiff admitted, either at the disciplinary hearing or at his deposition, that he committed some or all of the charged conduct, Plaintiff flatly denies that he was smoking in his cell. (Dkt. No. 90-26 at 3-4; Dkt. No. 99 ¶¶ 74-75.) Therefore, Plaintiff has raised a triable issue of fact that Defendants Catlin and McDermott retaliated against him. Accordingly, I recommend that the Court deny Defendants' motion for summary judgment of this claim.

### 3. Due Process

Plaintiff claims that Defendant McDermott violated his right to due process during the disciplinary hearing. (Dkt. No. 9.) Defendants move for summary judgment of this claim. (Dkt. No. 90-2 at 25-27.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss this claim.

Plaintiff received written notice of the charges against him. (Dkt. No. 90-25 at 3.) Plaintiff did not request any witnesses. *Id.* Plaintiff received a written statement of the disposition, in which Defendant McDermott stated that he relied on the misbehavior report in reaching his decision and that he imposed the punishment "[t]o impress upon the inmate to follow the smoking policy." *Id.* at 2.

Regarding the issue of whether Defendant McDermott was a fair and impartial hearing officer, evidence in the record supports his ruling. Defendant McDermott had the misbehavior report and Plaintiff's testimony. (Dkt. No. 90-26.) He was able to weigh Plaintiff's credibility. Accordingly, his decision was not arbitrary.[13] Thus, there is no triable issue of fact that

---

[13] As discussed above, Plaintiff has raised a triable issue of fact that the decision was retaliatory. Although these two conclusions may seem mutually exclusive, they do not contradict each other because different legal standards apply to the two claims.

Defendant McDermott violated Plaintiff's due process rights during his conduct of the hearing. Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

### G. April 5, 2011, Misbehavior Report

#### 1. Facts

Plaintiff alleges that on or about April 5, 2011, Defendant Stevens stated to Plaintiff, "I heard that you like to write complaint[]s against staff. Well you pick[ed] the wrong one this time." (Dkt. No. 9 ¶ 21.) Defendant Stevens declares that he never made that statement. (Dkt. No. 90-11 ¶ 8.)

Plaintiff alleges that later that day, upon returning to his cell from a program, his cell had been searched and he had received a misbehavior report issued by Defendant Stevens. (Dkt. No. 9 ¶ 22.) The record shows that the misbehavior report charged Plaintiff with possessing unauthorized expired medication, creating a fire safety hazard, and being noncompliant with cell orderliness rules. (Dkt. No. 90-27 at 4.) In the misbehavior report, Defendant Stevens stated that, while making a security round, he noticed an antenna hanging out of Plaintiff's cell window. *Id.* The antenna was constructed of bare wires, covered wires, and a can opener. *Id.* While investigating the antenna, Defendant Stevens also confiscated twenty Naproxen pills and a vial of cream that had been issued to Plaintiff at Attica Correctional Facility. *Id.* Defendant Stevens declares that, at the time he issued the misbehavior report, he was not aware that Plaintiff had written letters of complaint. (Dkt. No. 90-11 ¶ 9.)

The record shows that Defendant McDermott conducted the disciplinary hearing on April

15, 2011.[14] (Dkt. No. 90-27 at 1.) Plaintiff pleaded not guilty to all charges. *Id.* at 3. Plaintiff alleges that he explained to Defendant McDermott that the misbehavior report was false and motivated by retaliation for Plaintiff having written complaints against prison staff concerning Plaintiff's refusing the request to assault another inmate. (Dkt. No. 9 ¶ 26.) Plaintiff alleges that Defendant McDermott stated that he did not care about Plaintiff's defense and that Plaintiff picked the wrong person to complain about. *Id.* Defendant McDermott stated that Plaintiff should have done what the correctional officers wanted and that doing so would have saved him from all of his problems. *Id.* Defendant McDermott found Plaintiff guilty and sentenced him to fifteen days loss of privileges.[15] (Dkt. No. 90-27 at 1.)

Broadly construed, the complaint asserts retaliation claims against Defendants Stevens and McDermott and a due process claim against Defendants McDermott as a result of this incident.

### 2. Retaliation

---

[14] The record shows that on April 15, 2011, Defendant McDermott also conducted the disciplinary hearing regarding a misbehavior report issued by former Defendant Doty. (Dkt. No. 90-29 at 1.) Plaintiff pleaded not guilty to both charges. *Id.* at 3. Defendant McDermott found Plaintiff guilty and sentenced him to sixty days in keeplock and loss of privileges. *Id.* at 1. Plaintiff served the keeplock sentence from April 15, 2011, through June 14, 2011. *Id.* As discussed further below in Section I, Defendant McDermott also began the disciplinary hearing regarding an April 13, 2011, misbehavior report on April 15, 2011. (Dkt. No. 90-31.)

[15] Plaintiff alleges that on or about April 16, 2011, Plaintiff appealed Defendant McDermott's decision to Defendant Martuscello. (Dkt. No. 9 ¶ 28.) Plaintiff alleges that he explained to Defendant Martuscello the circumstances behind all of the misbehavior reports. *Id.* The record shows that this appeal related only to the decision regarding former Defendant Doty's misbehavior report. (Dkt. No. 90-15 at 6.) Defendant Miller affirmed that decision. *Id.* This appeal did not involve Defendant Stevens' misbehavior report and will not be discussed here.

Plaintiff alleges that Defendants Stevens and McDermott retaliated against him for writing letters of complaint by issuing the misbehavior report and finding him guilty. (Dkt. No. 9.) Defendants move for summary judgment of these claims. (Dkt. No. 90-2 at 19-25.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss these claims.

Regarding the first element of Plaintiff's retaliation claim, as discussed above, complaining to a superior officer is at least arguably protected conduct. *Jones*, 665 F. Supp. 2d at 398. Regarding the second element, as discussed above, both filing a misbehavior report and imposing a keeplock sentence constitute adverse action. *Gill*, 389 F.3d at 384. The issue, then, is whether Plaintiff has raised a triable issue of fact that there was a causal connection between the protected conduct and the adverse actions.

As with the claims discussed above, Plaintiff has established temporal proximity. Plaintiff alleges that he wrote a letter of complaint to Defendant Fischer on March 27, 2011. (Dkt. No. 9 ¶ 17.) Defendant Stevens issued the misbehavior report on April 5, 2011. (Dkt. No. 90-27 at 4.) Defendant McDermott conducted the disciplinary hearing on April 15, 2011. *Id.* at 1. Thus, Plaintiff has raised a triable issue of fact as to temporal proximity. Regarding the second factor, as previously shown, Plaintiff has not established that he had a good disciplinary record before the alleged protected conduct. (Dkt. No. 90-15.) Regarding the third factor, Plaintiff was not vindicated at the hearing on the matter. (Dkt. No. 90-27 at 1.)

Regarding the fourth factor, Plaintiff alleges that both Defendant Stevens and Defendant McDermott made statements suggesting that they had retaliatory motives for their actions. Plaintiff alleges that Defendant Stevens said "I heard that you like to write complaint[]s against

staff. Well you pick[ed] the wrong one this time." (Dkt. No. 9 ¶ 21.) Defendant Stevens declares that he never made that statement. (Dkt. No. 90-11 ¶ 8.) Plaintiff declares that Defendant McDermott said that he did not care about Plaintiff's defense and that Plaintiff picked the wrong person to complain about. (Dkt. No. 9 ¶ 26.) Defendant McDermott declares that he "never retaliated against Mr. King for filing grievances or letters of complaint." (Dkt. No. 90-9 ¶ 6.) Defendants argue that Plaintiff's allegations about their statements are "baseless" because they have denied making those statements. (Dkt. No. 90-2 at 24-25.) The parties' contrasting version of events raises credibility issues that cannot be resolved on a motion for summary judgment. "Credibility determinations . . . are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255; *see also Rule*, 85 F.3d at 1011 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment."). Thus, Plaintiff has raised a triable issue of fact regarding the fourth factor.

Having raised a triable issue of fact as to two of the causal connection factors, the burden shifts to Defendants to show "that there is no dispute that the plaintiff committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report." *Gayle*, 313 F.3d at 681 (citations omitted). Under Rule 118.21, which Plaintiff was charged with violating, "[i]nmates shall not create a fire, health or safety hazard in any area of the facility by improperly storing flammable materials or other property." N.Y. Comp. Codes R. & Regs. tit. 7, § 270.2(B)(19)(iii). At the disciplinary hearing, Plaintiff asserted that he had not created a fire hazard but admitted that he attached a can opener to wires and hung it out a window. (Dkt. No. 90-28 at 4.) Courts are required to grant prison officials deference in their decisions regarding prison safety. *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2009). Here, prison officials determined

that the presence of a can opener and wires–which Plaintiff admitted having–created a safety hazard. Thus, there is no dispute that Plaintiff committed the conduct charged in the misbehavior report. Therefore, I recommend that the Court grant Defendants' motion for summary judgment and dismiss this claim.

### 3. Due Process

Plaintiff alleges that Defendant McDermott violated his due process rights during the disciplinary hearing. (Dkt. No. 9.) Defendants move for summary judgment of this claim. (Dkt. No. 90-2 at 25-27.) For the reasons discussed below, I recommend that the Court dismiss this claim.

Plaintiff received advanced notice of the claims against him. (Dkt. No. 90-27 at 3.) Plaintiff did not request any witnesses. *Id.* Plaintiff received a written statement of the disposition, in which Defendant McDermott stated that relied on the misbehavior report in reaching his decision and that he imposed the punishment "[t]o impress upon this inmate not to act in this manner." *Id.* at 2.

Regarding the issue of whether Defendant McDermott was a fair and impartial hearing officer, evidence in the record supports his ruling. Defendant McDermott had the misbehavior report and Plaintiff's testimony before him. (Dkt. No. 90-28.) He was able to weigh Plaintiff's credibility. Accordingly, his decision was not arbitrary. Thus, there is no triable issue of fact that he violated Plaintiff's due process rights during the hearing. Therefore, I recommend that the Court grant Defendants' motion and dismiss this claim.

### H. Statements by Defendant Young

Plaintiff alleges that on April 9, 2011, Defendant Young had him brought to the dayroom

area of Cellblock C-1. (Dkt. No. 9 ¶ 24.) Plaintiff alleges that in the presence of approximately five other officers, Defendant Young threatened Plaintiff. *Id.* Defendant Young allegedly told Plaintiff to "drop [Plaintiff's] complaints and the problems will stop." *Id.* Defendant Young allegedly stated that if Plaintiff continued to write complaints, that Plaintiff would "have a hard time here in Coxsackie." *Id.* Plaintiff alleges that he refused to drop his complaint and was returned to his cell. *Id.*

Plaintiff alleges that later in 2011, Defendant Young told Defendant Kane that Plaintiff likes to write complaints and to make sure that Plaintiff gets "the special treatment" while on keeplock. (Dkt. No. 9 ¶ 29.)

Broadly construed, the complaint asserts retaliation claims against Defendant Young as a result of these incidents. Defendants have not addressed these claims. (Dkt. No. 90-2.) For the reasons discussed below, I recommend that the Court sua sponte dismiss these claims because Plaintiff has not alleged any facts plausibly suggesting that Defendant Young took adverse action against him.

> Under some circumstances, verbal threats may constitute adverse action, depending on their degree of specificity and the context in which they are uttered. *See, e.g.*, *Hepworth v. Suffolk County*, No. 2:02-cv-6473, 2006 WL 2844408, at *8-9 (E.D.N.Y. Sept. 29, 2006) (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence . . . such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate] . . . for exercising his First Amendment" rights). Thus, vague intimations of some unspecified harm generally will not rise to the level of adverse action for the purpose of a First Amendment retaliation claim. *See, e.g., Bartley v. Collins*, No. 95 Civ. 10616, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (stating that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action") (citing *Dawes*, 239 F.3d at 493, for the proposition

that "[n]ot every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment")*; Alicea v. Howell*, 387 F. Supp.2d 227, 237 (W.D.N.Y.2005) (defendant's "alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] d[id] not give rise to a First Amendment retaliation claim"); *Cruz v. Hillman*, No. 01 Civ. 4169, 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that defendant made statement which "expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said 'Green Haven is an open battlefield, so be careful' " was insufficient to state retaliation claim).

*Bumpus v. Canfield*, 495 F. Supp. 2d 316, 326 (W.D.N.Y. 2007) (allegation that correctional officer "chastised" prisoner and said that he was "getting tired of" prisoner filing grievances insufficient to state a retaliation claim). Plaintiff's allegations about Defendant Young are not distinguishable from the type of statements held to be non-actionable. Therefore, I recommend that the Court dismiss the retaliation claims against Defendant Young sua sponte pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2).

## I.      April 13, 2011, Misbehavior Report

### 1.      Facts

Plaintiff alleges that on or about April 13, 2011, Defendant Stevens stated to Plaintiff, "[Y]ou [are] still here, you're not [on] keeplock.  Well I will take care of that."  (Dkt. No. 9 ¶ 25.)  Defendant Stevens declares that he never made that statement.  (Dkt. No. 90-11 ¶ 11.)

The record shows that Defendant Stevens issued a misbehavior report to Plaintiff on April 13, 2011, charging him with possessing gang-related literature, possessing handwritten material to a potential hate crime, possession of altered state property, possession of prohibited items, and possession of excess property.  (Dkt. No. 90-31 at 4.)  According to the misbehavior

report, Defendant Stevens discovered seven categories of contraband in Plaintiff's cell during an assigned daily cell search. *Id.* These ranged from altered sheets and extra sweatshirts to twelve photographs "depicting gang hand signs and potential criminal activity including an order to murder." *Id.* A note on the back of one of the photographs said, "If you see this cat don't trust him or just kill him!" *Id.* at 10. A note on the back of another said, "Silk the bitch ass cat!" *Id.* Defendant Stevens declares that he did not issue the misbehavior report in order to retaliate against Plaintiff. (Dkt. No. 90-11 ¶ 12.) Rather, he declares, he issued the misbehavior report because Plaintiff was in violation of facility rules. *Id.* In particular, he declares that, based on his training in gang recognition and signs of gang activities, he was concerned about the photographs. *Id.* ¶¶ 13-15.

The record shows that Defendant McDermott began conducting the disciplinary hearing regarding the misbehavior report on April 15, 2011. (Dkt. No. 90-31 at 1.) Plaintiff pleaded not guilty to all charges. *Id.* at 3. The hearing was continued to May 6, 2011. *Id.* at 1. Defendant McDermott found Plaintiff guilty of all charges and sentenced him to thirty days of keeplock, loss of privileges, and confiscation of some property. *Id.* Plaintiff served the keeplock sentence from June 14, 2011, to July 14, 2011. *Id.* Defendant Miller affirmed the decision. (Dkt. No. 90-15 at 6.)

Broadly construed, the complaint asserts retaliation claims against Defendants Stevens and McDermott and due process claims against Defendants McDermott and Miller as a result of this incident.

2.     Retaliation

Plaintiff alleges that Defendants Stevens and McDermott retaliated against him for

writing letters of complaint to Defendant Fischer by issuing the misbehavior report and finding him guilty. (Dkt. No. 9.) Defendants move for summary judgment of these claims. (Dkt. No. 90-2 at 19-25.) For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss these claims.

Regarding the first element of Plaintiff's retaliation claims, complaining to a superior officer is at least arguably protected conduct. *Jones*, 665 F. Supp. 2d at 398. Regarding the second element, both filing a misbehavior report and imposing a keeplock sentence constitute adverse action. *Gill*, 389 F.3d at 384. The issue, then, is whether Plaintiff has a raised a triable issue of fact that there was a causal connection between the protected conduct and the adverse action.

As with the claims discussed above, Plaintiff has raised a triable issue of fact regarding temporal proximity. Plaintiff alleges that he wrote a letter of complaint to Defendant Fischer on March 27, 2011. (Dkt. No. 9 ¶ 17.) Defendant Stevens issued the misbehavior report on April 13, 2011. (Dkt. No. 90-31 at 4.) Defendant McDermott began the disciplinary hearing on April 15, 2011. *Id.* at 1. Thus, Plaintiff has raised a triable issue of fact as to temporal proximity. Regarding the second factor, Plaintiff has not established that he had a good disciplinary record before the alleged protected conduct. (Dkt. No. 90-15.) Regarding the third factor, Plaintiff was not vindicated at the hearing on the matter. (Dkt. No. 90-31 at 1.)

Regarding the fourth factor, Plaintiff alleges that Defendant Stevens said "[Y]ou're not [on] keeplock. Well I will take care of that" on the same day he issued the misbehavior report. (Dkt. No. 9 ¶ 25.) Defendant Stevens denies making that statement. (Dkt. No. 90-11 ¶ 11.) Plaintiff declares that Defendant McDermott said that he did not care about Plaintiff's defense

42

and that Plaintiff picked the wrong person to complain about.  (Dkt. No. 9 ¶ 26.)  Defendant

McDermott declares that  he "never retaliated against Mr. King for filing grievances or letters of

complaint."  (Dkt. No. 90-9 ¶ 6.)  Defendants argue that Plaintiff's allegations about their

statements are "baseless" because they have denied making those statements.  (Dkt. No. 90-2 at

24-25.)  Again, the parties' contrasting version of events raises credibility issues that cannot be

resolved on a motion for summary judgment.  "Credibility determinations . . . are jury functions,

not those of a judge."  *Anderson*, 477 U.S. at 255; *see also Rule*, 85 F.3d at 1011 ("Assessments

of credibility and choices between conflicting versions of the events are matters for the jury, not

for the court on summary judgment.").  Thus, Plaintiff has raised a triable issue of fact regarding

the fourth factor.

Having raised a triable issue of fact as to two of the causal connection factors, the

burden shifts to Defendants to show "that there is no dispute that the plaintiff committed the

most serious, if not all, of the prohibited conduct charged in the misbehavior report."  *Gayle*, 313

F.3d at 681 (citations omitted).  Defendants have met that burden.  Plaintiff admitted in

testimony at the disciplinary hearing that he did, indeed, have altered sheets, extra sweatshirts,

fifty cassette tapes, and two pillows.  (Dkt. No. 90-32 at 4.)  Plaintiff does not dispute that he

possessed the photographs or the content of the notes on the back of them.  Viewing the

photographs, it was not arbitrary for Defendants to conclude that they depicted gang activity.

(Dkt. No. 90-31 at 5-11.)  Thus, Defendants have shown that Plaintiff committed the prohibited

conduct charged in the misbehavior report.  Therefore, I recommend that the Court grant

Defendants' motion for summary judgment and dismiss these claims.

3.    Due Process

Plaintiff alleges that Defendants McDermott and Miller violated his right to due process during the disciplinary hearing and by affirming the result of that hearing.  (Dkt. No. 9.) Defendants move for summary judgment of these claims.  (Dkt. No. 90-2 at 25-27.)  For the reasons discussed below, I recommend that the Court grant Defendants' motion and dismiss these claims.

Plaintiff received advanced notice of the charges against him.  (Dkt. No. 90-31 at 3.) Plaintiff received a written statement of the disposition, in which Defendant McDermott stated that he relied on the misbehavior report in reaching his decision and that he imposed the punishment "[t]o impress upon this inmate that this type of misconduct will not be tolerated."  *Id.* at 2.

Plaintiff requested six witnesses, and Defendant McDermott allowed two of them to testify.  (Dkt. No. 90-31 at 3.)  Defendant McDermott refused to call the package room sergeant to testify about Plaintiff's attempts to get rid of the excessive cassette tapes because "I don't see what the package room Sergeant is going to tell me other than what I already know, that you have more tapes than you['re] supposed to and yeah, you may have been making a step toward getting rid of them, but you didn't."  (Dkt. No. 90-32 at 8.)  Defendant McDermott refused to call two mental health staff members, who Plaintiff said would testify that he had informed them about harassment by correctional officers.  *Id.* at 8-12.  It is not clear from the record why Defendant McDermott refused to call Defendant Superintendent Martuscello as a witness.

Defendant McDermott's refusal to call the witnesses did not violate Plaintiff's right to due process.  An inmate's right to call witnesses is not the same as a defendant's in a criminal

44

trial, but rather is qualified by the circumstances of prison life. *Wolff*, 418 U.S. at 566-67. The

Supreme Court has stated that disciplinary hearing officers must have the discretion to deny

witnesses, noting that valid bases for the denial of witnesses would include irrelevance, lack of

necessity, and other hazards particular to each case. *Id*. Here, Defendant McDermott reasonably

concluded that the proposed witnesses would offer duplicative testimony.

Regarding the issue of whether Defendant McDermott was a fair and impartial hearing

officer, evidence in the record supports his ruling. Defendant McDermott had the misbehavior

report, Plaintiff's testimony, and the testimony of two witnesses before him. (Dkt. No. 90-32.)

He was able to view the photographs and property discovered in Plaintiff cell. *Id.* He was able

to weigh the witnesses' credibility. Accordingly, his decision was not arbitrary. Thus, there is

no triable issue of fact that he violated Plaintiff's due process rights during the hearing or that

Defendant Miller violated Plaintiff's due process rights by affirming the decision. Therefore, I

recommend that the Court grant Defendants' motion and dismiss these claims.

### J.       June 6, 2011, Separation From Other Inmates

Plaintiff alleges that on or about June 6, 2011, Defendant Kane separated Plaintiff from

the rest of the inmates during keeplock recreation as retaliation for the complaints Plaintiff wrote

against Defendants. (Dkt. No. 9 ¶ 29.) Defendants have not addressed this claim. (Dkt. No. 90-

2.) I recommend that the Court dismiss this claim sua sponte for lack of adverse action. "Case

law suggests that the isolated or sporadic denial of privileges do not suffice to state a claim of

actionable retaliation." *Lunney v. Brureton*, No. 04 Civ. 2438 (LAK) (GWG), 2007 U.S. Dist.

LEXIS 38660, at *65-66, 2007 WL 1544629, at *20-21 (S.D.N.Y. May 29, 2007[16]) (collecting cases).[17] Here, Plaintiff does not even allege that he was denied privileges. He alleges that he was *separated* from other inmates during recreation, not that he was denied recreation. Therefore, I recommend that the Court dismiss this claim sua sponte.

### K.     Defendants Fischer and Martuscello

Defendants move for summary judgment of the claims against Defendants Fischer and Martuscello for lack of personal involvement. (Dkt. No. 90-2 at 16-18.) The claims against Defendant Martuscello should be dismissed for lack of personal involvement because there is no evidence that he was involved in any way with the surviving claim against Defendants Catlin and McDermott. (*See* Dkt. No. 90-15 at 6.) Similarly, given the lack of record evidence about what any letters that Plaintiff wrote to Defendant Fischer said or whether those letters were sent to Defendant Fischer's proper address, it is recommended that the claims against Defendant Fischer also be dismissed for lack of personal involvement.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 90) be

**GRANTED IN PART AND DENIED IN PART**. Specifically, I recommend that the Court dismiss all claims except the retaliation claims against Defendants Catlin and McDermott arising from the March 28, 2011, misbehavior report and the April 6, 2011, disciplinary hearing on that

---

[16]     Lexis and Westlaw list different dates for this decision. The Court has used the date listed by Westlaw.

[17]     The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

report; and it is further

**RECOMMENDED** that the Court sua sponte dismiss the claims against Defendants Young and Kane; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Lunney v. Brureton*, No. 04 Civ. 2438 (LAK) (GWG), 2007 U.S. Dist. LEXIS 38660, 2007 WL 1544629 (S.D.N.Y. May 29, 2007); and it is further

**ORDERED** that the Clerk amend the caption to change the spelling of Defendant "C.O. Hessle"'s last name to "Hoessle" and the spelling of Defendant "C.O. McIntyer"'s last name to "McIntyre."

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: March 17, 2015  
     Syracuse, New York

Therese Wiley Dancks  
United States Magistrate Judge

2007 WL 1544629
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

George LUNNEY, Plaintiff,

v.

Lieutenant BRURETON, et al., Defendants.

No. 04 Civ. 2438(LAK)(GWG). | May 29, 2007.

**Attorneys and Law Firms**

George Lunney, Elmira, NY, pro se.

Benjamin Lee, Assistant Attorney General, New York, NY, for Defendants.

*REPORT AND RECOMMENDATION*

GABRIEL W. GORENSTEIN, United States Magistrate Judge.

*TABLE OF CONTENTS*

| | | | |
|---|---|---|---|
| I. | | *BACKGROUND* .................... | 2 |
| | A. | *Facts* ..................... | 2 |
| | B. | *Procedural History* .............. | 5 |
| II. | | *APPLICABLE LAW* ............... | 8 |
| | A. | *Standard of Review on Summary Judgment Motions* ............... | 8 |
| | B. | *Exhaustion* ................ | 10 |
| | | 1. | *PLRA* .............. | 10 |
| | | 2. | New York's Inmate Grievance Program% i ......... | 11 |
| III. | | *DISCUSSION* ................... | 12 |
| | A. | *Eighth Amendment Claim Relating to Food in the SHU* ............... | 12 |
| | B. | *Eighth Amendment Claim of Excessive Force* ........ | 16 |
| | | 1. | *Exhaustion* ................. | 16 |
| | | 2. | *Merits* ................... | 21 |
| | C. | *Eighth Amendment Claims Based on Lack of Laundry Services and Personal Hygiene Items* .................... | 26 |
| | | 1. | *Laundry Services* .............. | 2 7 |
| | | 2. | *Plumbing Problems and Failure to Provide Personal Hygiene Items* ..... | 28 |
| | | 3. | *Personal Involvement* ................. | 30 |
| | D. | *First Amendment Retaliation Claims* .............. | 30 |
| | | 1. | *Law Governing First Amendment Retaliation* ........... | 31 |

2.    *Claims against Fischer* ...............                                    32

3.    *Claims against Blot* ...............                                       34

        a.    Exhaustion of Claims Against Blot% i .........              ........... 34

        b.    *The Merits of Lunney's Allegation that Blot Denied Him Showers, Meals,*  ........... 37
              *and Recreation* ............

                i.    Adverse Action.........................................................              38

                ii.   Causal Connection....................................................              40

        c.    *The Merits of Lunney's Allegation that Blot Filed a False Misbehavior*  ........... 41
              *Report* ...............

        d.    *The Merits of Lunney's Allegation that Blot Threatened Physical*  ........... 43
              *Violence* ..............

        e.    *The Merits of Lunney's Allegation of Retaliatory Assault* .....   ........... 45

4.    *First Amendment Claim Against Frazier* .........                          47

5.    *First Amendment Claim Against Brereton* ........                          47

E.    *Unfiled Grievances* ...............                                       4 8

F.    *Fourteenth Amendment Due Process Claims* ..........                       50

        1.    *Law Governing Disciplinary Proceedings* ..........                 50

        2.    *Written Disposition of Disciplinary Hearing* ..........            51


Conclusion ........................                                              55

**\*1** George Lunney, currently an inmate at the Elmira Correctional Facility, has brought this suit *pro se* under 42 U.S.C. § 1983 against employees of the Sing Sing Correctional Facility ("Sing Sing"), where Lunney was previously housed. Lunney alleges that certain defendants violated his due process rights by improperly conducting a disciplinary hearing that resulted in his confinement in the Special Housing Unit ("SHU") of Sing Sing. He further alleges that various defendants were deliberately indifferent to inhumane conditions of confinement in the SHU in violation of his Eighth Amendment rights, that he was the victim of an assault, and that he was retaliated against for filing grievances with respect to conditions in the SHU in violation of his rights under the First Amendment.

Defendants now move for summary judgment. As described below, the defendants' motion should be granted, with the exception of the portion of their motion concerning Lunney's claim of (1) excessive force against Correction Officers Blot and Frazier and (2) his First Amendment retaliation claims (a) against defendant Officer Blot based on the allegedly retaliatory assault, threats, and deprivation of recreation and showers and (b) against Officer Frazier for his participation in the retaliatory assault.

## I. *BACKGROUND*
The facts described below and later in this Report are drawn largely from Lunney's affidavit. *See* Plaintiff's Affidavit, filed June 13, 2006 (Docket # 88) ("Lunney Aff."). In many places, Lunney's affidavit cites to allegations contained in his amended complaint. *See* Amended Complaint, filed Mar. 24, 2005 (Docket # 34) ("Am.Compl."). That is, the affidavit cites the allegations of the amended complaint without repeating the substance of the incorporated matters under oath or penalty of perjury. Because defendants have not objected to this approach, we proceed as if any such incorporated

matters in the Amended Complaint were admissible under [Fed.R.Civ.P. 56(e)].

### A. *Facts*

On May 21, 2002, Lunney returned to his cell following a "medical shower" to find Correction Officer Hadzovic leaving the cell. *See* Lunney Aff. ¶ 1 (incorporating Am. Compl. at 3 ¶ 1). Hadzovic informed Lunney that he had just searched his cell. *Id.* After conducting a pat frisk on Lunney, Hadzovic reentered the cell and came out with a box of spaghetti. *Id.* Hadzovic announced that he would confiscate the box, which appeared to be altered, and locked Lunney in his cell. *Id.*

Approximately 45 minutes after Hadzovic left, Correction Sergeant Guadagno came to Lunney's cell with two other correction officers. *Id.* (incorporating Am. Compl. ¶ 2). Guadagno informed Lunney that a "shank type weapon" was discovered in the confiscated spaghetti box. *Id.* Lunney asserted that the weapon was not his and that he had merely purchased the spaghetti from the commissary. *Id.* Nonetheless, he was escorted to the SHU to await disciplinary action. *Id.*

 **\*2** Lunney received a "Tier III" misbehavior report on May 22, 2002. *Id.* (incorporating Am. Compl. ¶ 3); Inmate Misbehavior Report (reproduced as Ex. A to Notice of Motion to Dismiss, filed June 10, 2004 (Docket # 15) ("Motion to Dismiss")). Following a disciplinary hearing on June 13, 2002, Lunney was found guilty of possession of a weapon and sentenced to nine months' confinement in the SHU. Lunney Aff. ¶ 2 (incorporating Am. Compl. ¶ 4). Lunney filed an administrative appeal with Donald Selsky, the Director of Special Housing/Inmate Disciplinary Program for the New York State Department of Correctional Services, who affirmed the disposition on August 22, 2002. Lunney Aff. ¶ 2; Am. Compl. at 2.

Lunney then filed a petition pursuant to Article 78 of the New York Civil Practice Law and Rules in the New York State Supreme Court, Albany County. Lunney Aff. ¶ 2. On September 16, 2002, Justice Thomas J. McNamara issued an order to show cause directing Selsky to respond to the petition. *Id.* ¶ 4. On October 3, 2002, Selsky rescinded the disciplinary determination and ordered a rehearing on the ground that Lunney had not been given adequate assistance in preparing his defense. *Id.* ¶ 5. Lunney subsequently withdrew his Article 78 petition. *Id.* ¶ 9.

The rehearing commenced on October 15, 2002. *Id.* ¶ 11; Disciplinary Hearing Transcript (reproduced as Ex. B to Motion to Dismiss) ("Transcript"). During the hearing, a dispute arose between the hearing officer, Lieutenant Brereton, [1] and Lunney. Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 29-37. Lunney requested permission to leave the hearing, Brereton granted him permission to do so, and Lunney was escorted out. Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 34-37. Lunney was again found guilty of possessing a weapon and sentenced to nine months in the SHU with a corresponding loss of all privileges. Lunney Aff. ¶ 11 (incorporating Am. Compl. ¶ 7); Transcript at 59.

Lunney subsequently filed a request for discretionary review with Brian Fischer, at that time the Superintendent of Sing Sing. Lunney Aff. ¶ 13; Am. Compl. at 2. The disciplinary disposition was affirmed by First Deputy Superintendent Paul Kikendall. Lunney Aff. ¶ 13; Am. Compl. at 2. In an appeal to the Commissioner of the New York State Department of Correctional Services, Lunney argued that he had not been provided with a copy of the hearing disposition and that Selsky had no authority to order a new disciplinary hearing once the action in state court had been filed. Lunney Aff. ¶ 14 (incorporating Am. Compl. ¶ 10). The Acting Director of Special Housing rejected the appeal on November 7, 2002, although he reduced Lunney's sentence from nine to six months in the SHU. *Id.;* Review of Superintendent's Hearing (reproduced as Ex. D to Motion to Dismiss) ("Hearing Review").

Lunney filed a second Article 78 petition on November 19, 2002, with respect to the rehearing. *See* Article 78 Petition (reproduced as Ex. E to Motion to Dismiss); Lunney Aff. ¶ 15. On August 13, 2003, Justice Edward Sheridan of the Albany County Supreme Court dismissed the misbehavior report and ordered the Department of Correctional Services ("DOCS") to expunge all references to the incident from Lunney's institutional record. *See* Decision, Order and Judgment, dated Aug. 13, 2003 (reproduced as Ex. D to Combined Affirmation and Memorandum of Law in Opposition to Defendants' Motion for Dismissal, filed July 6, 2004 (Docket # 18) ("Pl. Opp. to Mot. to Dismiss")). Justice Sheridan concluded that the failure to provide Lunney with a copy of the hearing disposition was a violation of due process and that Selsky had no authority to order the rehearing once Lunney filed an Article 78 petition in state court. *Id.* at 3.

**\*3** Lunney was confined to the SHU for 180 days, Lunney Aff. ¶ 17, from May 21, 2002, to November 21, 2002. As is described in greater detail below, during this period Lunney asserts that he was served with cold, spoiled, or poorly prepared food, given inadequate laundry services, and denied hygiene items, showers, meals, and recreation by SHU staff. *Id.* ¶¶ 18, 21-23, 29 (incorporating Am. Compl. ¶ 15(a)-(d), (g)). Lunney also asserts that he was criticized and threatened by SHU staff for filing grievances related to prison conditions, and threatened with transfer by Superintendent Fischer. *Id.* ¶¶ 28, 30, 31 (incorporating Am. Compl. ¶ 15(f)-(h)). Lunney asserts that, on one occasion, he was physically assaulted by prison guards in retaliation for complaining about conditions in his cell. Lunney Aff. ¶¶ 24-25 (incorporating Am. Compl. ¶ 15(e)(1)-(2)).

**B. *Procedural History***
The original complaint in this action was filed on March 29, 2004. *See* Complaint (Docket # 2) ("Compl."). It alleged the following claims: (1) violation of due process when Selsky convened a new disciplinary hearing while the Article 78 review of the first hearing was pending, Compl. at 7 (¶ 1); (2) violation of due process based on the failure to provide Lunney with a timely written disposition of the second hearing, Compl. ¶ 8; (3) that in violation of the Eighth Amendment, Lunney was subject to "overall poor" conditions of confinement in the Sing Sing SHU, *see id.* at 7 (¶ 3), including the service of cold, spoiled, and improperly prepared food; inadequate laundry services; inadequate law library services; and inadequate reading material, Compl. ¶ 16; and (4) that he was retaliated against for filing grievances with respect to conditions in the SHU, *id.* ¶¶ 17, 19; *id.* at 7 (¶ 2), in violation of his rights under the First Amendment. Lunney sought $10 million in punitive and/or compensatory damages. *Id.* at 8.

Defendants filed a motion to dismiss. *See* Defendants' Memorandum of Law in Support of Their Motion to Dismiss, filed June 10, 2004 (Docket # 16). On February 23, 2005, this Court dismissed all of Lunney's claims except for: (1) his Eighth Amendment claim against Fischer with regard to improperly prepared food; (2) his First Amendment claim against Fischer alleging that he was threatened with physical retaliation for filing grievances; and (3) his due process claim against Brereton regarding the failure to receive a written disposition of his disciplinary hearing. *See Lunney v. Brureton,* 2005 WL 121720, at *16 (S.D.N.Y. Jan.21, 2005) (*"Lunney I"*), *adopted by,* 2005 WL 433285, at *1 (S.D.N.Y.

Feb.23, 2005). Lunney was given the opportunity to replead his claims. *Lunney I,* 2005 WL 121720, at *16.

Lunney then filed an amended complaint, which restated most of the allegations included in his original complaint. *See Id.* ¶¶ 15.It also contained new claims. Significantly, Lunney amended his original complaint to include as defendants Officers Michael Blot and Parrish Frazier. *See* Am. Compl. ¶ 16(h), (i). The claims in the amended complaint are as follows: (1) Selsky deprived Lunney of his First and Fourteenth Amendment rights by ordering a new disciplinary hearing and "depriving [him] of his right to challenge the original hearing in a court of law,"*see id.* ¶ 16(a); (2) Brereton violated Lunney's due process rights by failing to provide him with a written copy of the disposition for the hearing on October 17, 2002, *id.* ¶ 16(f); (3) Robert Murphy, Fischer, and Kikendall violated Lunney's due process rights by failing to remedy Lieutenant Brereton's failure to provide a copy of the disposition, *id.* ¶¶ 16(b)-(d); (4) Fischer violated Lunney's First Amendment rights by threatening to transfer him in retaliation for filing grievances, *id.* ¶ 16(c); (5) Fischer failed to remedy the "numerous sub-standard conditions of confinement in the S.H.U.," and subjected him to "forced labor without pay," *id.;*(6) Sean Kober violated Lunney's First and Eighth Amendment rights by failing "to operate the Sing Sing I.G.R.C. in accordance with D.O.C.S. policy and thus[ ] deprived plaintiff of his means to petition the government for the redress of grievances,"*id.* ¶ 16(e); (7) Anthony Chu violated Lunney's Eighth Amendment rights by failing to remedy "the many problems that existed with the S.H.U. food service program and for failing to provide plaintiff with wholesome, nutritious and properly prepared meals,"*id.* ¶ 16(g); (8) Blot violated Lunney's First, Eighth, and Fourteenth Amendment rights by (a) assaulting him, threatening and harassing him, and depriving him of showers, meals and recreation, all in retaliation for Lunney's filing of grievances; (b) by co-signing a misbehavior report against Lunney for an incident in which Blot was not involved; (c) by threatening Lunney for making complaints against other staff members; (d) by depriving Lunney of access to clean clothing and/or failing to ensure that the clothing was laundered; (e) by failing to provide Lunney with basic hygiene items; and (f) by failing to remedy the plumbing problems in Lunney's SHU cell, *id.* ¶ 16(h); and (9) Frazier violated Lunney's First and Eighth Amendment rights by assisting Blot in the aforementioned violations. *Id.* ¶ 16(i).

**\*4** On April 24, 2006, defendants moved for summary judgment on all claims. [2] On June 13, 2006, Lunney filed opposition papers. *See* Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (Docket # 87) ("Pl.Mem."); Lunney Aff. Lunney's papers did not include a statement made in response to the Defendants' 56.1 Statement as required by Local Civil Rule 56.1. Defendants subsequently filed reply papers. *See* Defendants' Reply Memorandum of Law in Support of Their Motion for Summary Judgment, filed July 28, 2006 (Docket # 91) ("Def. Reply Mem."); Lee Reply Declaration, filed July 28, 2006 (Docket # 92) ("Lee Reply Decl."). Lunney then submitted a sur-reply memorandum with an additional affidavit. Plaintiff's Sur-Reply Memorandum, filed Sept. 12, 2006 (Docket # 96) ("Pl.Sur-Reply"); Affidavit, dated Sept. 7, 2006 (Docket # 97) ("Sur-Reply Aff.").

## II. *APPLICABLE LAW*

### A. *Standard of Review on Summary Judgment Motions*
Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c); *accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw "all justifiable inferences" in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial,*' "*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation,"*Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998) (citing cases). In other words, the nonmovant must

offer "concrete evidence from which a reasonable juror could return a verdict in his favor."*Anderson,* 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case."*Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993) (quoting *Celotex,* 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case."*Allen v. Cuomo,* 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson,* 477 U.S. at 247-48).

### B. *Exhaustion*

#### 1. *PLRA*
**\*5** The Prison Litigation Reform Act ("PLRA") provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Accordingly, "[c]omplete exhaustion of ... administrative remedies through the highest level for each claim is required."*Veloz v. New York,* 339 F.Supp.2d 505, 514 (S.D.N.Y.), *aff'd,*178 Fed. Appx. 39 (2d Cir.2004); *see also Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) ("All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.' ") (citations omitted). In addition, the exhaustion must be "proper"- that is, "compl[y] with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."*Woodford v. Ngo,* --- U.S. ----, ----, 126 S.Ct. 2378, 2386-87, 165 L.Ed.2d 368 (2006) (internal citation and quotation omitted). Further, "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."*Porter,* 534 U.S. at 532. The exhaustion requirement applies even when a plaintiff seeks

relief not available in prison administrative proceedings, such as monetary damages. *See Booth v. Churner,* 532 U.S. 731, 740-41, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). Nonetheless, an inmate is not required to use this process where it "was reasonable for the inmate to conclude that his administrative remedies had been exhausted by [a] positive disposition" of some informal complaint. *Braham v. Clancy,* 425 F.3d 177, 183 (2d Cir.2005); *accord Dixon v. Goord,* 224 F.Supp.2d 739, 749 (S.D.N.Y.2002) ("The exhaustion requirement is satisfied by resolution of the matter, i.e., an inmate is not required to continue to complain after his grievances have been addressed."); *Perez v. Blot,* 195 F.Supp.2d 539, 546 (S.D.N.Y.2002).

In this Circuit, when a plaintiff advances a plausible explanation for his failure to exhaust, a court engages in a three-part analysis:

> First, the court must ask: whether administrative remedies were in fact "available" to the prisoner. [Second], [t]he court should also inquire ... whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. [Third], [i]f the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether *special circumstances* have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*\*6 Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir.2006) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)) (emphasis and alterations in original); *accord Curry v. Mazzuca,* 2006 WL 250487, at \*6 (S.D.N.Y. Feb.2, 2006).

Finally, in *Jones v. Bock,* --- U.S. ----, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), the Supreme Court held that courts must consider claims in a § 1983 complaint that have been

exhausted despite the presence of unexhausted claims. 127 S.Ct. at 923-26.

**2.** *New York's Inmate Grievance Program*

In New York, formal exhaustion for state prisoners generally requires complying with the three-step grievance and appeal procedure outlined in the Inmate Grievance Program. *See* N.Y. Comp.Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5. In brief, an inmate must first file a complaint with the Inmate Grievance Resolution Committee ("IGRC").7 N.Y.C.R.R. § 701.5(a). Next, after receiving a response from the IGRC, the inmate may appeal to the superintendent of the facility. *Id.* § 701.5(b). Finally, after receiving a response from the superintendent, the prisoner may seek any review of the superintendent's decision with the Central Office Review Committee ("CORC").*Id.* § 701.5(c).*See Hemphill,* 380 F.3d at 682. Generally, "[a] prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure."*Hairston v. LaMarche,* 2006 WL 2309592, at \*7 (S.D.N.Y. Aug.10, 2006) (citing cases).

**III.** *DISCUSSION*

In his opposition papers, Lunney did not submit a statement in response to the defendants' statement under Local Civil Rule 56.1. In light of Lunney's *pro se* status, and in light of the fact that he submitted an affidavit setting forth his disagreements with the defendants' version of the facts, *see* Lunney Aff., the Court will exercise its discretion not to penalize Lunney for this failure. *See, e.g., Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd.,* 422 F.3d 72, 75 (2d Cir.2005) ("district court has inherent authority to determine when to overlook or excuse a departure from its own local rules").

We now address the claims made in Lunney's amended complaint.

**A.** *Eighth Amendment Claim Relating to Food in the SHU*

Lunney maintains his Eighth Amendment rights were compromised when he was served food that was "cold, spoiled and poorly prepared" on "a near daily basis" during his detention in the SHU. *See* Lunney Aff. ¶ 18; Affirmation of A. Franco, DIN # 01-A-5104, undated (reproduced in Ex. E to Lunney Aff.), ¶ 3(a) (milk often spoiled, fruits and vegetables rotten, appearance and quality of meals poor and unpalatable, inmates forced to refuse meals on numerous occasions); Affirmation of Johnny Casaigne, DIN # 04-A-2867, undated (reproduced in Ex. E to Lunney Aff.), ¶ 3(a)

(same); Deposition of Johnny E. Casaigne, dated June 24, 2005 (reproduced as Ex. F to Lunney Aff.), at 27 ("I rarely ate the food because when it did come it was ... either spoiled, ice cold or wasn't even cooked right."); Deposition of Alisjandro Franco, dated June 24, 2005 (reproduced as Ex. G to Lunney Aff.), at 19 (refused meals "a few times"). Lunney states that he and other inmates "were often forced to refuse meals due to the poor quality of the food."*See* Lunney Aff. ¶ 18. Lunney also states that complaints and grievances about these problems were ignored, and that inmates "had to resort to refusing entire meals so as to get the attention of" defendants. *See id.* ¶ 19 (incorporating Am. Compl. ¶ 15(a)(1)). Finally, Lunney alleges that he suffered "[w]eight loss and muscle atrophy as a result of not receiving adequate meals."*See id.* ¶ 18 (incorporating Am. Compl. at 18 (¶ 2)), and that on one occasion he and other inmates "became ill after eating," *see Id.* ¶ 18.He states that the illness consisted of "stomach cramping, nausea, slight fever, chills and diarrhea," and that the inmates received antacid tablets for their discomfort. *See id.*(incorporating Am. Compl. at 18 (¶ 2)); Ambulatory Health Record, dated Aug. 20, 2002 (reproduced as Ex. H to Lunney Aff.) (medical records reflecting a doctor's assessment of "upset stomach," for which Lunney was given antacid tablets). Defendants note that Lunney "acknowledged that other than one alleged incident involving a dinner of rice and beans, [he] was never treated for food poisoning or spoiled food and that he did not know other inmates in the S.H.U. who were treated for food poisoning or spoiled food."*See* Def. 56.1 ¶ 20 (citing Deposition of George Lunney, dated June 23, 2005 (reproduced as Ex. A to Lee Decl.) ("Lunney Dep."), at 123).

**\*7** Defendants argue that Lunney has failed to exhaust his claim that the food in the SHU posed a threat to him and the other SHU inmates. *See* Def. Mem. at 11. With respect to this claim, Lunney does not argue that the grievance process was unavailable to him, that there is a basis for estopping defendants from relying on the exhaustion doctrine, or that there are other special circumstances excusing his failure to exhaust, *see* Pl. Mem. at 9-10-though, as described further below, he does make such an argument with respect to the excessive force and other retaliation claims. *See id.* at 6-7, 12-13.Rather, to support his contention that the food claim is exhausted, Lunney cites to grievances SS-35888-02 and SS-36314-02, as well as to "a grievance dated Sept. 29, 2002 and the letters sent to D.O.C.S. officials."*See id.* at 9 (citing Ex. K to Lunney Aff.). Grievance SS-35888-02, however, complains only that SHU inmates "received only one cup of milk" and that the inmates "do not get what

we're supposed to" in terms of "healthy food items." *See* Grievance SS-35888-02, dated July 20, 2002 (reproduced in Ex. K to Lunney Aff.). It mentions nothing about spoiled food or food that posed an immediate health risk to the inmates. Grievance SS-36314-02 mainly states that Lunney received Rice Krispies for breakfast even though the menu called for Bran Flakes, and thus that he was not receiving the proper amount of fiber in his diet. *See* Grievance SS-36314-02, dated Sept. 24, 2002 (reproduced in Ex. K to Lunney Aff.). It then also makes a brief reference to his food being "ice cold." *Id.* Thus, neither of these grievances support the broad claims now being made in the complaint.

Lunney also provides a copy of a purported grievance dated September 29, 2002. *See* Grievance (reproduced in Ex. K to Lunney Aff.). This grievance-which defendants contend was considered as part of SS-36314-02, *see* Def. Reply Mem. at 8 n. 2-contains a fleeting reference to "spoiled or rotten food" but gives no specifics on when the serving of such food occurred. This generic and unexplained reference to "spoiled or rotten food"-included at the end of a grievance that focuses largely on whether the fiber content of the food met dietary guidelines-was not sufficient to alert the prison officials as to the claims now being made in this complaint. While inmates are held only to a standard of "notice pleading" in grievances, *see Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004), Lunney's grievance statement was far too vague to provide the defendants with notice of when such spoiled food was served, in what manner, and with what frequency. It is thus insufficient to have exhausted this claim.

In any event, Lunney has not met his burden of showing he made the required appeals of even this grievance or that he should be excused from having done so. Although he asserts that this grievance was denied and appealed to the Superintendent, he concedes that he did not appeal it to the CORC, stating only that, based on the Superintendent's reply, "an appeal to the C.O.R.C. was unnecessary."Pl. Sur-Reply at 14. Lunney's general allegations that his grievances "proved ineffective in correcting the problems with the food" and that he made additional verbal complaints, *see* Lunney Aff. ¶ 19, do not excuse his failure to exhaust. *See, e.g., Curry v. Fischer,* 2004 WL 766433, at \*6 (S.D.N.Y. Apr.12, 2004) ("Since informal channels did not lead to the resolution of his complaints, Curry cannot be deemed to have informally exhausted his remedies.") (citing *Hernandez v. Coffey,* 2003 WL 22241431, at \*3 n. 4 (S.D.N.Y. Sept.29, 2003) (informal exhaustion cannot be found where no resolution is reached)); *see also Williams v. City of New York,* 2005 WL 2862007, at

*10 (S.D.N.Y. Nov.1, 2005) ("It is well settled that complaint letters to DOCS or prison officials do not satisfy the PLRA's exhaustion requirements.").

**\*8** Lunney makes general claims about the alleged mismanagement of the grievance process, *see* Pl. Mem. at 71-75, which are discussed further in section III.E below. However, there is no reason why these alleged failures should have excused his obligation to exhaust his claims regarding food. Nor has he shown that he was otherwise prevented from filing grievances on food-a fact most obviously demonstrated by the fact that he filed various food-related grievances as has just been noted. Notably, Lunney asserts that between February 2002 and March 2004 he filed "more than 100 grievances and more than a dozen complaints with outside agencies and D.O.C.S. officials regarding nearly every aspect of his confinement." Pl. Sur-Reply at 19.

In sum, Lunney's claim that his Eighth Amendment rights were violated by the failure of the prison system to provide him with safe food, *see* Am. Compl. ¶ 16(g), is unexhausted and must be dismissed.

**B.** *Eighth Amendment Claim of Excessive Force*

Lunney claims that he was assaulted by Officers Blot and Frazier "[d]uring his first week in the S.H.U." after he attempted to notify another officer that his sink and toilet were broken and he was missing certain personal hygiene items. *See* Lunney Aff. ¶ 24. He states that as a result of this assault, he suffered a "[s]mall cut to lip and another to left side of jaw with bruises and contusions to face and body." *See id.* ¶ 25 (incorporating Am. Compl. at 18 (¶ 1)). The defendants argue that this claim is unexhausted and that it fails on the merits.

*See* Def. Mem. at 10-11, 30-32. [3]

**1.** *Exhaustion*

Lunney states that he did not file a grievance against Blot and Frazier for this assault until after he was transferred to Cayuga Correctional Facility nearly two years later, because Blot threatened him with retaliation if he did so, stating that "he would receive a misbehavior report for assault on staff if he ... filed a complaint and claimed any injuries." *See* Lunney Aff. ¶ 25 (incorporating Am. Compl. ¶ 15(e)(2)). Blot also told him that if he did file a grievance, "his time in S.H.U. would be longer and harsher." *See id.* Lunney argues that under cases such as *Ziemba v. Wezner,* 366 F.3d 161 (2d Cir.2004), his failure to file a timely grievance was "justifiable." *See* Pl. Mem. at 5-7.

Defendants argue that Lunney's failure to exhaust the excessive force complaint in a timely fashion should not be excused for several reasons: (1) the grievances and appeals Lunney filed in 2004 at Cayuga were untimely, and regardless, made no reference to any instance of excessive force by Officers Blot and Frazier, but only to the Tier III hearing and "conditions of confinement" in the SHU, *see* Def. Reply Mem. at 6; (2) Lunney never mentioned any excessive force by Officers Blot and Frazier until he filed his amended complaint, *id.* at 7; and (3) the Second Circuit excuses failures to exhaust based on threats or retaliation only where "the record contain[s] documented proof of an inmate's prior complaints about the misconduct in a form other than a grievance along with allegations that an inmate was prevented from making these same complaints in the form of a grievance." *See id.* at 6 (citing *Ziemba* and *Hemphill* ).

**\*9** The first question is whether administrative remedies were in fact "available" to Lunney. *Brownell,* 446 F.3d at 311 (citing *Hemphill,* 380 F.3d at 686). To be available, an administrative remedy must "afford the possibility of some relief for the action complained of." *Booth,* 532 U.S. at 738; *accord Abney v. McGinnis,* 380 F.3d 663, 667 (2d Cir.2004). There is no dispute that the prison "provided grievance procedures that inmates claiming excessive force could utilize," *see Hemphill,* 380 F.3d at 686-specifically, the three-step process outlined in 7 N.Y.C.R.R. § 701.5. Nor is there any dispute that Lunney used these procedures frequently both before and after the alleged incident with Blot and Frazier. *See* Eagen Decl., Exs. A & B. Indeed, Lunney concedes that he "has an extensive history of prosecuting grievances." *See* Pl. Sur-Reply at 4.

The availability inquiry does not end here, however. In *Hemphill,* the Second Circuit held that the test for deciding whether ordinary grievance procedures were "available" is an "objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." 380 F.3d at 688 (citing *Davis v. Goord,* 320 F.3d 346, 353 (2d Cir.2003)). The court went on to note that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts." *See Hemphill,* 380 F.3d at 688.

Lunney's affidavit suggests that he failed to file a grievance regarding the assault by Officers Blot and Frazier until 2004 because Blot threatened him with retaliation if he did so. *See* Lunney Aff. ¶ 25 (incorporating Am. Compl. ¶ 15(e) (2)). Specifically, Lunney has asserted that Blot told him if he filed a grievance about the assault, "he would receive a misbehavior report for assault on staff" and that "his time in S.H.U. would be longer and harsher." *See id.* Lunney states that this threat led him to avoid seeking medical attention or filing a complaint regarding the assault by Blot and Frazier until nearly two years later, when he was transferred to Cayuga Correctional Facility. *See id.* Because on this motion for summary judgment, we accept as true the admissible evidence of Lunney, we must assume that Blot did in fact threaten Lunney in the manner Lunney has claimed.

Applying the "ordinary firmness" standard, it is certainly plausible that a reasonable factfinder could conclude that a prisoner in Lunney's situation would be deterred from complaining about an assault that had just occurred. Here, Lunney alleged that he was beaten and that the beating was followed immediately by specific threats, some impliedly physical, if he filed a grievance. *See Hemphill, e.g.,* 380 F.3d at 688-89 (remanding for determination of availability of remedies where officer told plaintiff he had "better drop" his complaint regarding injuries sustained in a beating and not seek any medical attention or the officer would "make your life a living hell"); *McCullough v. Burroughs,* 2005 WL 3164248, at *4 (E.D.N.Y. Nov.29, 2005) (plaintiff excused from failing to exhaust remedies after he was assaulted by officers in retaliation for prior grievances and during the assault, officer expressly threatened that he would "get [him]") (alteration in original); *accord Hepworth v. Suffolk,* 2006 WL 2844408, at *4-7 (E.D.N.Y. Sept.29, 2006) (exhaustion excused where inmate was threatened for filing a grievance); *Larry v. Byno,* 2006 WL 1313344, at *4 (N.D.N.Y. May 11, 2006) (inmate subject to physical assault and threats of violence excused from filing grievance); *cf. Benjamin v. Comm'r New York State Dep't of Corr. Servs.,* 2006 WL 783380, at *4 (S.D.N.Y. Mar.28, 2006) (suggesting in dictum that administrative remedies would be rendered unavailable where "the complaint specifically recounted threatening statements made by correctional officers and plaintiff's 'acquiescence' to those threats") (citing *Hemphill,* 380 F.3d at 683-84, 687). Thus, Lunney has established a genuine issue of material fact with regard to the availability of administrative remedies for his claim of excessive force.

**\*10** Defendants contend that because Lunney "has no corroborated documentation of previously complaining about unconstitutional conduct in some form," this Court should not excuse his failure to exhaust this claim. *See* Def. Reply Mem. at 7. They argue that *Hemphill* and *Ziemba* "require[ ]" this result. *See id.* at 6-7. However, neither *Hemphill* nor *Ziemba* held that a plaintiff alleging threats or retaliation in relation to an excessive-force claim is required to have "corroborated documentation of previously complaining" about such force. Each merely noted that there had been some such documentation. For example, in *Hemphill,* the plaintiff alleged that he failed to exhaust his administrative remedies with regard to an excessive-force claim because an officer had told him, "I'll make your life a living hell throughout this penal system because I have friends all over." *See* 380 F.3d at 684. The Second Circuit held that the district court was required to consider whether "some seemingly available remedies were rendered unavailable by the threats Hemphill received" or alternatively, whether the defendants' exhaustion defense was estopped by the threats the officer had allegedly made to the plaintiff. *See id.* at 688-89. While the court noted that the plaintiff had written a letter to the superintendent of the prison, *see id.* at 688, the court's holding with respect to these questions did not rely on this fact, *see id.* at 688-89, and specifically noted that his letter to the superintendent did not necessarily mean that administrative remedies were "available" to him. *Id.*

Nor does it help defendants' argument that Lunney waited until his transfer to another facility, nearly two years later, to submit a grievance of any kind. First, such a delay is consistent with the actions of someone in fear of retaliation by Blot. Second, if Lunney was justified in not filing a grievance at all, he should not be penalized for filing an untimely one.

In sum, construing the record in the light most favorable to Lunney, a factfinder could conclude that administrative remedies were not "available" to Lunney with respect to his claim of excessive force. Accordingly, summary judgment cannot be granted on this question.[4]

### 2. Merits

Lunney asserts that after he attempted to notify another officer about his plumbing problems and lack of personal hygiene items, Officer Blot approached his cell and told him to "shut the fuck up or we are coming in there and you will not like the results." Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶ 15(e)(1)). After further discussion between Lunney

and Officers Blot and Frazier, Blot called for Lunney's cell door to be opened, and then "rushed into [his] cell and began punching [him] in the head and body." *Id.* Frazier then entered the cell "and placed [Lunney] in a choke hold for several minutes." *See id.* Lunney adds that he sustained "some bruises" from the attack, specifically that his "throat was bruised where Frazier had grabbed" him and that he had a "couple [of] black and blues on my side," and that "about a week later bruises, you know, swelling went down." *See id.* ¶¶ 24-25 (citing Lunney Dep. at 171-74); *see also id.* (citing Lunney Dep. at 180-81 ("I could have used [medical attention], yeah. I had some bruises. I was pretty banged up.")).

**\*11** Defendants argue that any injuries Lunney sustained were *de minimis* and thus not actionable under the Eighth Amendment. *See* Def. Mem. at 30-32; Def. Reply Mem. at 26-27.

To establish an Eighth Amendment violation based on a claim of excessive force, "an inmate must meet both an objective and a subjective requirement." *See Griffin v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999). To meet the objective requirement, "the alleged violation must be 'sufficiently serious' by objective standards." *See id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). The objective component is "context specific, turning upon 'contemporary standards of decency.' " *See Blyden v. Mancusi,* 186 F.3d 252, 263 (2d Cir.1999) (quoting *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). To meet the subjective requirement, the inmate must show that the prison officials involved "had a 'wanton' state of mind when they were engaging in the alleged misconduct." *See Davidson v. Flynn,* 32 F.3d 27, 30 (2d Cir.1994). "[T]he 'wantonness' inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' "*See Blyden,* 186 F.3d at 262 (quoting *Hudson,* 503 U.S. at 7). "Thus, [t]he key inquiry under *Hudson* and its precedents is whether the alleged conduct involved unnecessary and wanton infliction of pain." *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir.2000) (citing *Davidson,* 32 F.3d at 30) (internal quotation marks omitted).

"However, the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] per se ... whether or not significant injury is evident.' "*Griffin,* 193 F.3d at 91 (quoting *Blyden,* 186 F.3d at 263). This result follows because " '[w]hen prison officials maliciously

and sadistically use force to cause harm, contemporary standards of decency always are violated.' "*Blyden,* 186 F.3d at 263 (quoting *Hudson,* 503 U.S. at 9). Nevertheless, "a *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.' "*Id.* (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

Furthermore, courts in this circuit have held that "although the subjective component is 'inherently an inquiry into [the] defendant's state of mind, plaintiff need not offer particular evidence of defendant's mental state. For purposes of opposing defendants' summary judgment motion, plaintiff has satisfied his burden on this element by merely pleading a scenario in which the use of force could not have been in good faith.' "*See Watson v. Delgado,* 2006 WL 1716869, at \*5 (S.D.N.Y. June 20, 2006) (quoting *Santiago v. Campisi,* 91 F.Supp.2d 665, 673 (S.D.N.Y.2000)); *see also Boddie v. Schnieder,* 105 F.3d 857, 861 (2d Cir.1997) ("Where no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the abuse itself may, in some circumstances, be sufficient evidence of a culpable state of mind.").

**\*12** In this case, Lunney states that Blot and Frazier first threatened him and then entered his cell and attacked him without provocation. *See* Lunney Aff. ¶¶ 24-25 (incorporating Am. Compl. ¶ 15(e)(1)). Because under Lunney's version of the facts, the officers' alleged use of force could not have been in good faith, he has provided sufficient evidence of the subjective component of an Eighth Amendment violation. *See, e.g., United States v. Walsh,* 194 F.3d 37, 50 (2d Cir.1999) ("the subjective element is satisfied in this case as there was absolutely no reasonably perceived need for the application of force"); *Santiago,* 91 F.Supp.2d at 673 ("Assuming plaintiff's story to be true, defendant's alleged conduct is clearly unrelated to any 'good-faith effort to maintain or restore discipline.' ") (citation omitted).

With regard to the objective component, Lunney has alleged that as a result of the assault by Blot and Frazier, he sustained "some bruises," specifically, his "throat was bruised where Frazier had grabbed" him and he had a "couple black and blues on my side," and that "about a week later bruises, you know, swelling went down." *See* Lunney Aff. ¶¶ 24-25 (citing Lunney Dep. at 171-74); *see also id.* (citing Lunney Dep. at 180-81 ("I could have used [medical attention], yeah. I had

some bruises. I was pretty banged up.")). While defendants argue that any injuries Lunney suffered were *de minimis* and not documented by medical records, *see* Def. Mem. at 30-32, they point to no case where alleged injuries of this kind were considered outside the protection or the Eighth Amendment. Indeed, *Griffin* held that an inmate's Eighth Amendment claim survived summary judgment where "the only injuries he suffered were a bruised shin and swelling over his left knee," and "the only evidence he intended to offer in support of his claims was his own testimony." *See Griffin,* 193 F.3d at 91. The court explained that although the inmate's claim of excessive force was "weak and his evidence extremely thin, dismissal of the excessive-force claim was inappropriate because there are genuine issues of material fact concerning what transpired after appellant was handcuffed and whether the guards maliciously used force against him." *See id.* Thus, one court has concluded that "bruising or equivalent injuries may be found by a reasonable fact-finder to constitute minor rather than de minimis harm." *See Watson,* 2006 WL 1716869, at *7 (citing *McCrory v. Belden,* 2003 WL 22271192, at *6 (S.D.N.Y. Mar.22, 2004)) (internal quotation omitted).

Lunney's alleged injuries-involving bruising and contusions-are quite different from the claim of the prisoner in *Boddie,* who had alleged only that he had been "bumped, grabbed, elbowed, and pushed." *See Boddie,* 105 F.3d at 862. In dismissing the claim, *Boddie* noted that the plaintiff "does not maintain that he experienced any pain or injury as a result of the physical contact," and that he did not "allege facts that show that the defendants used force 'maliciously and sadistically to cause harm,' rather than 'in a good-faith effort to maintain or restore discipline.'" *See id.* Both these circumstances are present in Lunney's case, however.

**\*13** In *Espinal v. Goord,* 2001 WL 476070 (S.D.N.Y. May 7, 2001), the court found the plaintiff's injuries to be *de minimis* where he was hit in the face two or three times, making his face turn red. 2001 WL 476070, at *13. However, the plaintiff in that case described these injuries as "really nothing." *Id.* In *Perkins v. Brown,* 285 F.Supp.2d 279 (E.D.N.Y.2003), a prisoner was not permitted to base an excessive force claim on allegations of a "broken lip," swollen nose, eye, fingers, and wrists, jaw pain, chest bruising, and "stress disorder" resulting from being struck, where the only evidence was the plaintiff's testimony and it was contradicted by prior statements of the plaintiff and medical evidence *Id.* at 284. The district court also pointed to a number of factors reflecting that such injuries were in fact

*de minimis,* including the plaintiff's assertion that his pain was "nothing major" or "nothing serious." *Id.* In contrast, Lunney has stated that his throat was bruised from being put in choke hold, that he had bruises on his side as well, and that the swelling from these injuries did not subside for about a week.

To the extent the defendants argue that the lack of medical records showing treatment is grounds for dismissing Lunney's claim, the Court rejects this argument inasmuch as there is no requirement that the claim of injury be substantiated in contemporaneous medical records. *See Griffin,* 193 F.3d at 91 (Eighth Amendment claim permitted to proceed to trial even though only evidence supporting it was plaintiff's testimony). Thus, cases have frequently denied summary judgment for excessive-force violations while noting the absence of corroborating medical records. *See, e.g., Atkins v. County of Orange,* 372 F.Supp.2d 377, 399 (S.D.N.Y.2005); *Davis v. Patrick,* 2000 WL 1154065, at *1 (S.D.N.Y. Aug.14, 2000); *Baskerville v. Goord,* 2000 WL 897153, at *1-2 (S.D.N.Y. July 6, 2000).

Finally, Blot and Frazier are not protected by qualified immunity on this claim. Qualified immunity attaches where (1) a constitutional right would have been violated on the facts alleged; but (2) it would have been objectively reasonable for the defendant to have believed that his actions did not violate clearly established law. *See Saucier v. Katz,* 533 U.S. 194, 200-201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Lunney has a constitutional right to be free from a correction officer's use of excessive force, and it could not be objectively reasonable for Officer Blot or Officer Frazier to have believed that the use of excessive force is allowed under the law. *See Calamia v. City of New York,* 879 F.2d 1025, 1036 (2d Cir.1989) ("The right of an individual not to be subjected to excessive force has long been clearly established."); *Johnson v. City of New York,* 2006 WL 2354815, at *5 (S.D.N.Y. Aug.14, 2006) (citing cases).

### C. *Eighth Amendment Claims Based on Lack of Laundry Services and Personal Hygiene Items*

**\*14** Lunney claims that prison officials violated his Eighth Amendment rights based on the existence of inadequate laundry services, plumbing problems, and the deprivation of personal hygiene items. *See* Lunney Aff. ¶¶ 20-23. While the defendants argue that these claims are unexhausted, *see* Def. Mem. at 11, it is unnecessary to reach this question because the claims fail on the merits.

The Supreme Court has held that "[t]he Constitution 'does not mandate comfortable prisons,' but neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)). The Eighth Amendment imposes an obligation on prison officials to provide "humane conditions of confinement" including "adequate food, clothing, shelter, and medical care." *Id.* To establish a violation of the Eighth Amendment on the basis of inhumane prison conditions, a plaintiff must show that the deprivation is sufficiently serious as to result in a denial of " 'the minimal civilized measure of life's necessities,' " *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (quoting *Rhodes*, 452 U.S. at 347), and that the prison officials acted with "a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996) (citation omitted). In the context of conditions of confinement, the requisite mental state for the prison officials is "deliberate indifference." *Wilson*, 501 U.S. at 302-03.

**1.** *Laundry Services*

Lunney re-alleges the claim from his original complaint that the laundry services in the SHU were inadequate. *See* Lunney Aff. ¶¶ 20-21. In rejecting this claim on the motion to dismiss, this Court held that there "is no Eighth Amendment violation ... in instances where inmates are provided the opportunity and the supplies to wash their own clothes." *See Lunney I*, 2005 WL 121720, at *8 (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986) (no constitutional violation where inmates were permitted to wash their clothes in sinks and were provided with laundry detergent)); *Benjamin v. Fraser*, 161 F.Supp.2d 151, 178-79 (S.D.N.Y.2001) (availability of sinks and laundry detergent or bar soap sufficient under the Eighth Amendment), *aff'd in relevant part and vacated in part,* 343 F.3d 35 (2d Cir.2003). The Court thus concluded that "Lunney's mere allegation that his clothes were returned to him without being cleaned on various occasions does not state an Eighth Amendment claim as to inadequate laundry services." *See Lunney I*, 2005 WL 121720, at *8. Lunney asserts that his sink was small and that he was not given soap specifically for laundry purposes. Lunney Dep. at 167. But he has not submitted evidence that would allow a reasonable to jury to conclude that he could not achieve some level of cleanliness with the materials he had. *See generally Benjamin*, 161 F.Supp.2d at 178-79. That Lunney asserts he was without soap for eight days and had a clogged sink for five, as described in the next section, shows at most that he lacked the means to clean his own clothing

for a relatively brief period. As such, there was no Eighth Amendment violation.

**2.** *Plumbing Problems and Failure to Provide Personal Hygiene Items*

**\*15** Lunney alleges that he "was placed in a cell where the sink was clogged and there was no running water." *See* Lunney Aff. ¶ 22. He states that he made "verbal complaints" and that the sink was repaired "on about plaintiff's fifth day in S.H.U." *See id.* (incorporating Am. Compl. ¶ 15(c)). He also states that he did not receive "soap, toothpaste, a toothbrush, and other hygiene items." *See Id.* ¶ 23. While he states that his verbal complaints were ignored, he adds that the problem "was informally resolved on May 29, 2002 when C.O. Lebron of the I.G.R.C. corrected the problem." *See id.*

With regard to toiletries and hygiene items, Lunney fails to show that such a denial rose to the level of deliberate indifference to his health or safety. Courts have typically held that temporary deprivations of toiletries do not violate the Eighth Amendment. *See Trammell v. Keane*, 338 F.3d 155, 165 (2d Cir.2003) (deprivation of "toiletries for approximately two weeks-while perhaps uncomfortable-does not pose such an obvious risk to an inmate's health or safety to suggest that the defendants were 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that they also drew] the inference' ") (quoting *Farmer*, 511 U.S. at 837) (alterations in original); *Fernandez v. Armstrong*, 2005 WL 733664, at *5-6 (D.Conn. Mar.30, 2005) (up to 16-day deprivation of toothbrush, toothpaste, soap, and shampoo did not violate the Constitution).

With regard to Lunney's claim of no running water, defendants have pointed to evidence that Lunney filed a grievance on May 23, 2002, regarding the plumbing problems in his cell, Grievance SS-35563-02, dated May 23, 2002 (reproduced as Ex. J to Lunney Aff.), and that it was repaired the next day. *See* SHU Activity Log, dated May 24, 2002 (reproduced as Ex. D to Lee Reply Decl.). Even if Lunney's cell sink lacked running water for five days, as he claims, he does not show an Eighth Amendment violation given that there is no evidence that he was deprived of water entirely during this period. The "[l]ack of access to running water, by itself, does not constitute the denial of the minimal civilized measure of life's necessities." *James v. Monroe County Jail*, 2005 WL 2030730, at *3 (W.D.N.Y. Aug.23, 2005) (no constitutional violation where inmates claimed they lacked

running water from cell sinks for several hours every night for over four months); *see also Johnson v. Comm'r of Corr. Servs.,* 699 F.Supp. 1071, 1074 (S.D.N.Y.1988) (plaintiff confined for one week in a cell with an inoperable sink did not suffer a constitutional violation because he was provided drinks with meals); *Castro v. Chesney,* 1998 WL 767467, at *4 (E.D.Pa. Nov.3, 1996) (no constitutional violation where plaintiff placed in a "dry cell" without running water for several days, given water "sometimes" when he asked for it and water was turned on every other day so he could wash his face and brush his teeth).

### 3. *Personal Involvement*

 **\*16** In any event, even if some constitutional deprivation had been shown, Lunney's submission does not provide facts that would show that any particular defendant sued here was personally involved in committing the violation. As the Second Circuit has noted, "[a]n individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority.'" *Back v. Hastings On Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). He can only be held liable if he was "personally involved in the alleged deprivation." *Id.* While there are number of ways in which such involvement can be shown, *see, e.g., Back,* 365 F.3d at 127 (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995)), Lunney has not provided evidence (as opposed to speculation) as to any of them.

In sum, defendants are entitled to summary judgment on Lunney's claims of a temporary lack of running water, plumbing problems, and denial of personal hygiene items.

### D. *First Amendment Retaliation Claims*

Lunney asserts that he was assaulted by Blot and Frazier because he made verbal complaints about SHU conditions, *see* Lunney Aff. ¶ 24; that Blot threatened him with physical violence on several occasions for his writing of grievances, *see id.* ¶¶ 30-31; that Blot denied him recreation, meals, and showers because of his complaints, *see id.* ¶ 29; and that Fischer threatened to transfer him to Attica for writing grievances, *see id.* ¶ 28 (incorporating Am. Compl. ¶ 15(f)). He also asserts in his amended complaint that Brereton fired him from his position as a porter "as a means of retaliation." Am. Compl. at ¶ 15(g)(2). The defendants argue that these claims are unexhausted and fail on the merits. *See* Def. Mem at 9-12, 12-17; Def. Reply Mem. at 9-10, 11-15.

In its prior ruling, the Court dismissed Lunney's general allegations of threats and harassment because "comments that are merely 'insulting' or 'disrespectful' do not give rise to a constitutional violation." *See Lunney I,* 2005 WL 121720, at *11 (citations omitted). The Court also dismissed Lunney's claim that Fischer threatened to transfer him to another facility for writing grievances because, *inter alia,* Lunney did not allege that he was transferred because he filed grievances against prison officials. *See id.* However, the Court did not dismiss Lunney's claim that he was threatened with physical violence for filing grievances. *See id.* (citing *Hernandez v. Goord,* 312 F.Supp.2d 537, 545 (S.D.N.Y.2004) (threatened bodily injury and threats to inmate's life sufficient to state a claim)). Lunney's retaliation claims re-appeared in somewhat different form in his amended complaint, *see* Am. Compl. ¶ 16(c), which also contains new retaliation claims against Blot, Frazier and Brereton. *See id.* ¶¶ 15(g)(2), 16(h), (i).

### 1. *Law Governing First Amendment Retaliation*

 **\*17** The First Amendment protects prisoners from retaliation for engaging in protected speech, including submitting grievances regarding prison conditions. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (citing *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988)). "[I]ntentional obstruction of a prisoner's right to seek redress of grievances 'is precisely the sort of oppression that ...section 1983[is] intended to remedy.'" *Id.,* 89 F.3d at 80 (quoting *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987)) (alterations in original). A prisoner asserting a retaliation claim must show "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 380 (2d Cir.2004) (citation omitted).

Moreover, in the prison context, the Second Circuit has recognized "the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated." *Colon,* 58 F.3d at 872 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). Thus, courts "examine prisoners' claims of retaliation with skepticism and particular care." *Colon,* 58 F.3d at 872.

## 2. *Claims against Fischer*

In his affidavit, Lunney alleges that Fischer "repeatedly threatened" him "in retaliation for his filing of grievances and complaints regarding S.H.U. conditions."*See*Lunney Aff. ¶ 28 (incorporating Am. Compl. ¶ 15(f)) (Lunney "subjected to threats of being transferred to Attica" by Fischer, who "made it quite clear to plaintiff that he did not like the fact that plaintiff was writing grievances and complaints to outside agencies."). He further states that his prison records reflect that Fischer attempted to transfer him "under the reason that plaintiff's behavior in Sing Sing was unsuitable."*See*Lunney Aff. ¶ 28 (incorporating Am. Compl. ¶ 15(f)). While defendants argue that Lunney's claim should be dismissed because he did not properly exhaust the claim in accordance with the PLRA, it is not necessary to reach this question because the claim fails on the merits.

Lunney's First Amendment claim against Fischer is based on his claim that Fischer "threaten[ed]" him in response to his grievance writing. Am. Compl. ¶ 16(c); Lunney Aff. ¶ 28. But Lunney's only specific allegation on this point is that Fischer "did ...*try* to transfer plaintiff but D.O.C.S. officials in Albany, New York cancelled the transfer."Lunney Aff. ¶ 28 (emphasis added); *see also* Pl. Mem. at 14-17.

This allegation cannot meet the requirement that the plaintiff experience an "adverse action." *Pidlypchak,* 389 F.3d at 380. While "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim."*Dawes v. Walker,* 239 F.3d 489, 492-93 (2d Cir.2001), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Only retaliatory conduct which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" may support such a claim.*Id.* at 493.The Second Circuit has "made clear that this objective test applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."*Pidlypchak,* 389 F.3d at 381 (citing *Davis v. Goord,* 320 F.3d 346 (2d Cir.2003)).

**\*18** The allegation in the complaint regarding the threats of transfer cannot be objectively viewed as deterring a person of ordinary firmness from exercising First Amendment rights. This is particularly true where Lunney's allegations are devoid of any dates or descriptions of the manner in which Fischer made the alleged threats. Moreover, the lack of dates also makes it impossible to determine whether there was a causal connection between the filing of grievances and the adverse action. Accordingly, summary judgment on this claim should be granted. It is, therefore, unnecessary to reach the question of qualified immunity. *See* Def. Mem. at 34; Def. Reply Mem. at 25. [5]

## 3. *Claims against Blot*

Lunney asserts that (1) Officer Blot denied him showers, meals, and recreation in retaliation for his grievances, *see*Lunney Aff. ¶ 29; (2) that Blot co-signed a misbehavior report against him stemming from an incident to which Blot was not a party; and that Blot subsequently told Lunney, "If I ever hear about you complaining about another officer you'll be sorry. You won't be so lucky next time,"*see id.* ¶ 31 (incorporating Am. Compl. ¶ 15(h)); (3) that Blot threatened to harm Lunney physically if Lunney refused Blot's offer of a bribe to stop writing grievances, *see id.* ¶ 30; and (4) Blot assaulted him in retaliation for verbal complaints about the conditions in the SHU. *See id.* ¶¶ 24-25.

Defendants contend that each of these claims should be dismissed because Lunney failed to exhaust them and also dismissed on the merits. *See* Def. Reply Mem. at 5-7, 10. Defendants further contend that Blot is entitled to qualified immunity "from plaintiff's retaliation claim involving an alleged false misbehavior report ...." Def. Mem. at 34; Def. Reply Mem. at 29-30.

### a. *Exhaustion of Claims Against Blot*

As to the four claims with respect to which the exhaustion defense has been raised, we have already discussed why Lunney should be excused from having failed to grieve the assault claim, *see* section III.B.1, and the same reasons that excuse the failure to grieve the assault apply equally to the claim that the motive for the assault was to retaliate for protected activity. Accordingly, there is no need to discuss exhaustion with respect to this aspect of the retaliation claim against Blot.

In addition, we conclude, for the reasons discussed in section III.D.3.c below, that Lunney's claim with respect to the false misbehavior report would fail on the merits. Accordingly, our discussion of exhaustion relates only to claims (1) and (3): that is, the claim regarding the denial of showers, meals, and recreation and the claim regarding the threat of physical violence.

Lunney alleges that Blot said: "If I ever hear about you complaining about another officer you'll be sorry. You won't be so lucky next time."Am. Compl. ¶ 15(h). He also states that "[Blot] would come in and threaten guys and tell guys 'listen, I'm going to write you up and you will get a new charge,' " Lunney Aff. ¶ 30 (citing Lunney Dep. at 190); and generally, that Blot "threaten[ed] [Lunney] with misbehavior reports, physical beatings and deprivations of privileges if he ... continued to write grievances."Am. Compl. ¶ 15(g). More specifically, in his deposition, Lunney states that Blot became "offended and upset about my writing grievances and he said he didn't like people that wrote grievances"; that he "would complain that he didn't like people writing grievances" and would "criticiz[e]" him for it. Lunney Dep. at 187. Lunney recounts one conversation as follows:

> *19 [H]e came to me one day and said "listen, I want you to stop writing grievances."And I said "listen, you guys are doing a lot of things wrong down here."He said "listen, if you don't stop writing grievances I'm going to break your fuckin' neck." He said "you're going to have a hard time in the SHU."

*Id.*

As already discussed in the context of Lunney's excessive-force claim, *see* section III.B the Second Circuit has held that "seemingly available remedies [may be] rendered unavailable by threats,"*Hemphill,* 380 F.3d at 688, if a "similarly situated individual of ordinary firmness" would not have "deemed them available." *Id.* (citations and quotations omitted). Likewise, the Second Circuit has held that threats by prison authorities may provide grounds for estoppel if defendants "took affirmative action to prevent [the prisoner] from availing himself of grievance procedures."*Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (citing cases). [6]

Liberally construed, Lunney's argument can be read as asserting both that (1) his failure to follow the formal exhaustion process should be excused because Blot's threats rendered the formal grievance process effectively unavailable to him and (2) that Blot's exhaustion defense was estopped by Blot's alleged threats.

Lunney's general assertions regarding threats-without the specific of dates or content of threats-might not be sufficient permit a finding on these points. But his assertion that Blot stated "if you don't stop writing grievances I'm going to break your fuckin' neck," Lunney Dep. at 187, coupled with the

allegation that Blot had actually assaulted him previously, would be sufficient to allow a factfinder to conclude that a "similarly situated individual of ordinary firmness" would not have deemed the inmate grievance process available with respect to grievances that involve conduct by Blot. *See, e.g., Hepworth v. Suffolk County,* 2006 WL 2844408, at *4-7 (E.D.N.Y. Sept.29, 2006) (inmate beaten and threatened with further violence after testifying against correction officers); *Larry v. Byno,* 2006 WL 1313344, at *4 (N.D.N.Y. May 11, 2006) (physical assault coupled with threat to kill inmate after inmate mailed a complaint); *McCullough,* 2005 WL 3164248, at *3-4 (assault with threat to "get [him]" if he filed another grievance). It also raises questions regarding estoppel as to any claim against Blot. Thus, a genuine issue of material fact exists as to (1) whether administrative remedies, though nominally "available," were functionally available to Lunney to grieve these claims-the deprivation of meals, showers and recreation and the threat of physical violence by Blot-against Blot and/or (2) whether Blot's alleged threats estop defendants from raising exhaustion as an affirmative defense.

We now address the merits of the four claims against Blot.

**b.** *The Merits of Lunney's Allegation that Blot Denied Him Showers, Meals, and Recreation*

*20 Lunney states that he was deprived of showers "at least twice a week." Lunney Dep. at 182. He asserts that this occurred "[b]ecause of problems I was having with Blot and my being vocal about the problems, the conditions of SHU."*Id.* at 183.He asserts that he was supposed to get three showers a week. *See* Pl. Mem. at 22. As to recreation, Lunney states that at least "three or four times a week [ ] Blot would come ... by with the list. He'd ask guys if they want recreation. We'd be brought down for breakfast. He'd tell me 'you're staying here.' *"Id.* (citing Lunney Dep. at 185-86). Lunney makes no specific statements as to Blot's depriving him of meals. While Blot denies ever depriving Lunney of meals, showers or recreation, *see* Blot Decl. ¶ 4, we accept Lunney's assertions as true for purposes of this motion.

Defendants challenge whether Lunney has established the second and third prongs of a prima facie case of retaliation: namely, whether (1) the deprivations constitute "adverse action," and (2) there is a causal connection between these deprivations and his grievance writing. Def. Mem. at 15.

*i. Adverse Action.*As an initial matter, defendants argue that Lunney's claim lacks sufficient specificity. Def. Reply

Mem. at 13. As is true in response to any motion for summary judgment, Lunney was required to provide evidence sufficient to allow a jury to find in his favor. Thus, "[c]onclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact."*Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998). Lunney's allegations regarding denial of meals are completely lacking in any such specifics. His allegations regarding the denials of showers and recreation, however, are sufficiently detailed to allow a trier of fact to conclude that such denials occurred. Accordingly, we limit our discussion to the issue of whether the denial of showers and recreation constitute "adverse action."

As noted, the Second Circuit has held that while "the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim."*Dawes,* 239 F.3d at 492-93. Only retaliatory conduct which would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights" may support such a claim. *Id.* at 493.Thus, the conduct must be "specifically directed at plaintiff[ ] and substantial enough to deter legitimate grievances against prison officers."*Salahuddin v. Mead,* 2002 WL 1968329, at *5 (S.D.N.Y. Aug.26, 2002). Conduct that is *de minimis* does not provide this deterrent effect and does not give rise to actionable retaliation. *Dawes,* 239 F.3d at 493;*see also Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir.1999) (citing *Bart v. Telford,* 677 F.2d 622, 625 (7th Cir.1982) ("[S]ince there is no justification for harassing people for exercising their constitutional rights [, harassment] need not be great in order to be actionable. Yet, ... [i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ....")) (alterations in original). What is *de minimis* varies according to context. *See Dawes,* 239 F.3d at 493 ("[p]risoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a[ retaliatory] action taken against them is considered adverse") (alteration in original) (citing *Thaddeus-X v. Blatter,* 175 F.3d 378, 398 (6th Cir.1999)). Thus, in the prison context, not all harms constitute legally sufficient grounds for retaliation claims. *See Salahuddin,* 2002 WL 1968329, at *4-5 (citing cases).

 **\*21** Case law suggests that the isolated or sporadic denial of privileges do not suffice to state a claim of actionable retaliation. *Chestnut,* 193 F.3d at 150 (remanding to district

court on interlocutory appeal where "there [was] a serious question as to whether ... [plaintiff's] asserted one-day denial of an opportunity to exercise, w[as] more than *de minimis*" ); *Snyder v. McGinnis,* 2004 WL 1949472, at *11 (W.D.N.Y. Sept.2, 2004) (deprivation of meal on two occasions is *de minimis* and does not state a claim for retaliation); *Lyons v. Wall,* 2006 WL 2945256, at *5 (D.R.I. Oct.13, 2006) (sporadic cold showers are *de minimis* ). Here, however, Lunney alleges a routine denial of showers and recreation such that he regularly had one shower a week instead of two, and three to four hours of recreation a week instead of the normal seven. Pl. Mem. at 22 (citing Lee Decl. Ex. J §§ 304.2, 304.3, 304.5; Lunney Aff. Ex. M at 140-142); *see also Ortiz v. McBride,* 380 F.3d 649, 655 (2d Cir.2004) (discussing normal conditions of the SHU as two showers a week and one hour of recreation a day). Defendants have pointed to no case where a constant denial of showers and recreation, in the proportions alleged here, was deemed to be *de minimis* as a matter of law. [7]

In sum, defendants are not entitled to summary judgment on this point.

*ii. Causal Connection.*Lunney must also show that there was "a causal connection between the protected speech and the adverse action."*Pidlypchak,* 389 F.3d at 380. *Colon* discusses a number of factors relevant to whether a causal connection exists, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. 58 F.3d at 872-73;*accord Sloane v. Mazzuca,* 2006 WL 3096031, at *14 (S.D.N.Y. Oct.31, 2006); *Baskerville v. Blot,* 224 F.Supp.2d 723, 732 (S.D.N.Y.2002).

Here, a reasonable factfinder might view Blot's decision to deny Lunney recreation and shower privileges as being prompted by Lunney's grievance writing. Lunney states that upon arrival to the SHU, he immediately complained about the conditions of his cell, both verbally and through the filing of written grievances. Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶ 15(c)-(e)). On his third day in the SHU, Officers Blot and Frazier assaulted him, and Blot warned him that he would suffer consequences if he filed a grievance. *Id.* (incorporating Am. Compl. ¶ 15(e)(1)-(2)). Nonetheless, Lunney continued to file grievances in the SHU. *See, e.g.,* Ex. K to Lunney Aff. Blot stated to him that he "didn't like people that wrote grievances" and told him "listen, I want

you to stop writing grievances" and that "if you don't stop writing grievances I'm going to break your fuckin' neck" and that "you're going to have a hard time in SHU."Lunney Dep. at 187. At the same time, Lunney states that he was routinely denied showers and recreation. Lunney Aff. ¶ 29. Thus, the evidence for causation centers on (1) the fact that there is no explanation provided for the denial of showers and recreation and (2) the evidence that Blot complained to Lunney about his writing grievances and specifically threatened Lunney about them during the same time period that the denial of showers and recreation was taking place. Lunney Dep. at 186-87. While it may also be reasonable to infer, as defendants argue, that the deprivations, if they did occur, were a result Lunney's "extensive disciplinary history," Def. Mem. at 15, on a motion for summary judgment, the Court must draw "all justifiable inferences" in favor of the non-moving party. *Anderson,* 477 U.S. at 255. Thus, Lunney has raised a genuine issue of material fact as to whether Blot denied showers and recreation in retaliation for Lunney's grievances. [8]

#### c. *The Merits of Lunney's Allegation that Blot Filed a False Misbehavior Report*

 **\*22** The filing of a false misbehavior report in response to constitutionally protected activity can constitute actionable retaliation. *See Graham,* 89 F.3d. at 79-81 (allegation that defendants filed false misbehavior reports against plaintiff in retaliation for his leadership in filing a grievance to protest the removal of workshop showers); *Jones v. Coughlin,* 45 F.3d 677-78, 680 (2d Cir.1995) (per curiam) (allegation that defendants, in retaliation for plaintiff's filing administrative complaint, filed a false misbehavior report that led to 120 days of punitive segregation).

Lunney asserts that a misbehavior report dated June 22, 2003-approximately six months after he left the SHU-"stemmed from plaintiff having sent letters to several facility staff members"-not including Blot-"complaining about being harassed by another staff member, C.O. Davis."*See* Am. Compl. ¶ 15(h); *see also* Misbehavior Report (reproduced in Ex. G. of Lee Decl.). Officer Gary, one of the officers to whom Lunney had sent the letter, wrote the misbehavior report because Lunney's letters violated facility correspondence rules that prohibit "correspond[ence] with dep[artment] employees [without] the express permission of the superintendent."*See* Lee Decl. Ex. G (citing DOCS Directive 4422). Blot "endorsed" the misbehavior report. *See* Def. 56.1 ¶ 22. Lunney was subsequently found guilty of this charge based on "[his] admissions that [he] willfully

wrote to a total of 15 officers including officer Gary,"*see* Lee Decl. Ex. G, and sentenced to 30 days' keeplock, loss of packages, loss of commissary, and loss of phone privileges. [9] *See id.*Defendants argue that Lunney has not met the elements of a retaliation claim. Def. Mem. at 16-17; Def. Reply Mem. at 14.

Lunney's claim is simply disposed of based on the evidence that the misbehavior report had a legitimate justification. The Second Circuit has held that, "[r]egardless of the presence of retaliatory motive, ... a defendant may be entitled to summary judgment if he can show dual motivation, *i.e.,* that even without the improper motivation the alleged retaliatory action would have occurred."*Scott v. Coughlin,* 344 F.3d 282, 287-88 (2d Cir.2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Thus, where a plaintiff has met his "initial burden of showing that an improper motive played a substantial part in defendant's action," the defendant may still obtain summary judgment if the defendant can "show it would have taken exactly the same action absent the improper motive."*Id.; see also Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir.1994) (affirming dismissal on summary judgment because correction officer's actions were of mixed motives and "would have been issued on proper grounds alone."); *see also Sher v. Coughlin,* 739 F.2d 77, 81-82 (2d Cir.1984) (affirming summary judgment dismissal of prisoner's retaliation claim where dual motivation existed for prisoner's transfer to another facility).

 **\*23** Assuming without deciding that Lunney had met his initial burden of showing that an improper motive played a substantial part in the decision to discipline him, Lunney concedes that the misbehavior report "stemmed from" a letter he wrote to Officer Gary. Am. Compl. ¶ 15(h). It is undisputed that writing letters to prison guards violates DOCS's policy. *See* DOCS Directive 4422. Lunney has provided no evidence of instances in which prisoners wrote letters to prison guards without receiving disciplinary action. Based on the evidence in the record, it would be purely speculative for a factfinder to conclude that the prison would not have taken the same action against Lunney regardless of any motive it had to punish him for writing grievances. Accordingly, defendants are entitled to summary judgment on this claim.

#### d. *The Merits of Lunney's Allegation that Blot Threatened Physical Violence*

Lunney states that Blot threatened him physically, both generally in response to his continued filing of grievances, *see* Lunney Aff. ¶¶ 29-30, and specifically in response to his complaint about another officer. *See id.* ¶ 31. Lunney's most specific allegations consist of two statements: (1) "If I ever hear about you complaining about another officer you'll be sorry. You won't be so lucky next time," Am. Compl. ¶ 15(h), and (2) "[I]f you don't stop writing grievances I'm going to break your fuckin' neck." Lunney Aff. ¶ 30 (citing Lunney Dep. at 186-87). He also states more generally that Blot "threaten[ed] [Lunney] with misbehavior reports, physical beatings and deprivations of privileges if he [ ] continued to write grievances." Am. Compl. ¶ 15(g). Defendants do not address this claim in their papers, although they argue that Blot is entitled to qualified immunity on it. *See* Def. Reply Mem. at 30.

Case law reflects that verbal threats may constitute adverse action, though whether they constitute adverse action seems to depend on their specificity and the context in which they are uttered. *Compare Hepworth,* 2006 WL 2844408, at *8-9 (denying summary judgment where "continued verbal threats" that inmate "would receive another beating or be killed" was sufficient "evidence ... such that a reasonable jury could find that the officers unconstitutionally retaliated against [inmate] ... for exercising his First Amendment"); *Brown v. Coughlin,* 965 F.Supp. 401 (W.D.N.Y.1997) (threat to inmate that when officers were "done with him" he would not want to "file any more complaints" sufficient for First Amendment retaliation claim); *Thaddeus-X,* 175 F.3d at 396, 398 ("In the prison context ... [h]arassment, physical threats" would "certainly be adverse" action), *with Bartley v. Collins,* 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (threats such as "we going to get you, you better drop the suit," do not rise to the level of adverse action); *Alicea v. Howell,* 387 F.Supp.2d 227, 237 (W.D.N.Y.2005) ("[Defendant's] alleged statements to plaintiff about there being 'no secrets in prison' and that plaintiff would 'have to pay the consequences' for filing a grievance against [defendant] do not give rise to a First Amendment retaliation claim," especially considering the fact that the threat was never carried out); *Cruz v. Hillman,* 2002 WL 31045864, at *7 (S.D.N.Y. May 16, 2002) (allegation that correction counselor expressed his dislike for inmates who file civil lawsuits, and later came to plaintiff's cell and said "Green Haven is an open battlefield, so be careful," insufficient to state a retaliation claim). Given the directness and specificity of the alleged threats here, a factfinder could permissibly decide that the threats were such that it would deter an inmate of "ordinary firmness" from engaging in protected activity.

**\*24** Nor should Blot be entitled to qualified immunity. It would not have been "objectively reasonable" for Blot to have believed that it did not violate "clearly established" law regarding retaliation to tell Lunney that he would "break [his] fuckin' neck" if Lunney continued to write grievances. In other words, the contours of the right to be free from First Amendment retaliation were "sufficiently clear that [Blot] would [have] underst[ood] that what he [was] doing violate[d] that right." *Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

### e. *The Merits of Lunney's Allegation of Retaliatory Assault*

We have already discussed Lunney's claim that the assault by Blot and Frazier constituted an Eighth Amendment violation. *See* section III.B above. In addition, Lunney asserts that this same assault occurred "because of a verbal complaint he made to another officer regarding his not having hygiene items and the problems with his sink and toilet." Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶¶ 15(e)(1)-(2)). In his amended complaint, Lunney specifically pleads this as a First Amendment claim as well. *See* Am. Compl. at ¶ 16(h).

Defendants do not make any arguments regarding this claim specifically. Nonetheless, because they moved for summary judgment as to "plaintiff's First Amendment retaliation claim" generally on the ground that there is no "causal relationship between protected activity and adverse action," Def. Mem. at 2, Lunney was obligated to "come forward with admissible evidence supporting [his] claim" on this point. *Feurtado v. City of New York,* 337 F.Supp.2d 593, 599 (S.D.N.Y.2004) (citing cases) (internal quotation marks omitted). [10]

Lunney details that after "attempting to inform another officer, who was confined to a control room at least 45 feet away from plaintiff's cell," *see* Am. Compl. ¶ 15(e), that he lacked certain hygiene items,

> [d]efendants Blot and Frazier approached plaintiff's cell and began to state that plaintiff had better "shut the fuck up or we are coming in there and you will not like the results." After attempting to explain his problems to [them] Officer Frazier appeared to become calm and attempted to resolve plaintiff's complaints. However, defendant Blot stated "I don't give a shit about your fucking problems. File

a fucking grievance."Defendant Blot then proceeded to yell to the officer in the control booth to have plaintiff's cell opened.

Lunney Aff. ¶ 24 (incorporating Am. Compl. ¶¶ 15(e)(1)-(2)). According to Lunney, Blot then entered Lunney's cell and assaulted him, *id.,* though Blot denies that this assault ever took place. Blot Decl. ¶ 3.

Here, the sequence of events-a complaint followed by an immediate assault, accompanied by remarks referring to his complaint-would be sufficient for a jury to find that there was a causal connection between Lunney's complaints and the assault. Accordingly, summary judgment cannot be granted to defendants on this claim.[11]

#### 4. *First Amendment Claim Against Frazier*

 **\*25** Lunney alleges that Frazier assisted Blot "in assaulting plaintiff in retaliation for plaintiff making complaints."Am. Compl. ¶ 16(i). Once again, defendants argue only generally that plaintiff's First Amendment retaliation claim should be dismissed for failure to establish a causal relationship. Def. Mem. at 2. As to Frazier's particular actions, Lunney claims that he "entered the cell and placed [Lunney] in a choke hold for several minutes."Am. Compl. ¶ 15(e)(1). Frazier, like Blot, denies Lunney's allegations of unnecessary physical force. Frazier Decl. ¶ 3. For the same reasons just stated, Lunney's allegations are sufficient to allege a causal connection between his complaints and the assault. Thus, defendants must be denied summary judgment as to the claim against Frazier.

#### 5. *First Amendment Claim Against Brereton*

Lunney's amended complaint states that he "filed a formal grievance complaint with the I.G.R.C. arguing that he had been fired [from his job as a porter] as a means of retaliation by defendant Brureton."Am. Compl. ¶ 15(g)(2). No further information is provided on this issue. While Lunney makes reference to it in his memorandum of law, Pl. Mem. at 30, he does not address it in his affidavit. Given the conclusory reference in the amended complaint, there is no admissible evidence before the Court that would allow a jury to conclude that Lunney had made out each of the elements of a retaliation claim.

Accordingly, this claim must be dismissed.

### E. *Unfiled Grievances*

Lunney claims that defendant Kober violated his First and Eighth Amendment rights by denying him "access to an effective Inmate Grievance Program,"*see*Lunney Aff. ¶ 32, and thus that Kober "deprived plaintiff of his means to petition the government for the redress of grievances."*See* Am. Compl. ¶ 16(e). Specifically, he alleges that "[g]rievances were not timely filed or they were completely ignored," and that Kober stated they "were never received by his office."*See*Lunney Aff. ¶ 32 (incorporating Am. Compl. ¶ 15(i)). He adds that the Sing Sing IGRC "was not operating in accordance with policy," that grievances "were not being timely filed and responded to," that "investigations were biased and or incomplete," and that "appeals were not timely filed." *See* Am. Compl. ¶ 15(i). While defendants argue that this claim is unexhausted, *see* Def. Reply Mem. at 10, it is unnecessary to reach that issue because the claim fails on the merits.

It is well established that a claim of violation of a state grievance procedure is not cognizable in an action under 42 U.S.C. § 1983. *See Cancel,* 2001 WL 303713, at \*3 ("inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983"); *accord Davis v. Castleberry,* 364 F.Supp.2d 319, 323 (W.D.N.Y.2005); *Fernandez,* 2005 WL 733664, at \*9; *Mahotep v. DeLuca,* 3 F.Supp.2d 385, 390 n. 3 (W.D.N.Y.1998) (citing *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir.1993)).

 **\*26** It does not help Lunney's claim if it is construed as one for denial of access to the courts. To state a claim for denial of access to the courts under § 1983, Lunney must demonstrate that defendants "took or [were] responsible for actions that hindered [plaintiff's] efforts to pursue a legal claim."*Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003) (internal quotation marks omitted). Only those actions which rise to the level of " 'deliberate and malicious interference' " and which " 'actually impeded his access to the court or prejudiced an existing action' " are sufficient to present a claim. *Green v. Phillips,* 2006 WL 846272, at \*11-12 (S.D.N.Y. Mar.31, 2006) (quoting *Cancel v. Goord,* 2001 WL 303713, at \*4 (S.D.N.Y. Mar.29, 2001)); *accord Rivera v. Pataki,* 2005 WL 407710, at \*17-18 (S.D.N.Y. Feb.7, 2005). The evidence presented by Lunney, however, does not satisfy this standard. The operation of the grievance process is relevant to any access-to-the-courts claim only insofar as the procedure is a prerequisite for the filing of a civil suit under the PLRA. Lunney has not shown how the operation of the grievance

procedure denied him such access. Moreover, in light of the fact that prisoners are excused from filing grievances where prison officials prevent them from doing so or make the grievance process not "available," *see, e.g., Brownell, 446 F.3d at 311-12,* any such actions-even if they had been demonstrated-could not be shown to have deprived Lunney of his ability to bring any lawsuit. Thus, this claim too must be dismissed.

### F. *Fourteenth Amendment Due Process Claims*

As in his original complaint, Lunney asserts that his right to due process was violated by two separate actions. First, Lunney claims that Selsky improperly ordered a second disciplinary hearing after the Article 78 proceeding had been filed with respect to the first hearing. *See* Lunney Aff. ¶ 14 (incorporating Am. Compl. ¶ 10). Second, he argues that defendants' failure to provide him with a timely written disposition of his disciplinary hearing was a violation of his due process rights. *See* Am. Compl. ¶¶ 10, 12. This first claim is identical to one the Court dismissed on the merits in its original ruling, *see Lunney I,* 2005 WL 121720, at *14, and thus the Court will not reconsider it here. Accordingly, we address only the second claim. [12]

#### 1. *Law Governing Disciplinary Proceedings*

A party asserting a due process claim "must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz,* 380 F.3d at 654 (quoting *Giano v. Selsky,* 238 F.3d 223, 225 (2d Cir.2001)). Prisoners subject to disciplinary proceedings can show a liberty interest only if "disciplinary punishment 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *See Hanrahan v. Doling,* 331 F.3d 93, 97 (2d Cir.2003) (per curiam) (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" *Palmer v. Richards,* 364 F.3d 60, 64 (2d Cir.2004) (quoting *Wright v. Coughlin,* 132 F.3d 133, 136 (2d Cir.1998)).

**\*27** There is no bright-line rule in determining whether a particular period of confinement in a SHU meets the *Sandin* standard of an "atypical and significant" hardship thereby

implicating due process protection. *See id.* (citations omitted). However, as in the original motion, defendants do not argue that Lunney's liberty interests were not implicated by his nine-month sentence of confinement to the SHU-which was later reduced to six months-under the standard established in *Sandin.* It is assumed, therefore, that Lunney's sentence of confinement did implicate a liberty interest for purposes of this motion. Consequently, we consider whether Lunney was denied due process when he was not provided with a written disposition of his disciplinary hearing and when the second hearing was scheduled.

#### 2. *Written Disposition of Disciplinary Hearing*

As noted above, *see* section I.A, Lunney's first disciplinary hearing, in June 2002, resulted in a finding of guilt for which he was sentenced to nine months in the SHU. Lunney appealed this ruling, which was affirmed in August 2002. Lunney then filed an Article 78 petition in the state Supreme Court, which led to an order to show cause directing Selsky to respond to the petition. In October 2002, Selsky rescinded the disciplinary determination and ordered a rehearing on the ground that Lunney had not been given adequate assistance in preparing his defense. The rehearing was held in October 2002, and Lunney was again found guilty and sentenced to nine months in the SHU. He again appealed, arguing this time that he had not received a copy of the hearing disposition. His appeal was denied, although his sentence was reduced to six months because the original sentence had exceeded the guidelines "without further justification." *See* Memorandum, dated Nov. 7, 2002 (reproduced in Ex. J to Selsky Decl., filed July 12, 2005 (Docket # 84) ("Selsky Decl.")). Lunney filed a second Article 78 petition with respect to the rehearing, and in August 2003, a judge of the State Supreme Court dismissed the original misbehavior report and concluded that the failure to provide Lunney with a copy of the hearing disposition was a violation of due process.

With regard to the timing and manner of notifying Lunney about the hearing disposition, Lunney acknowledges that he received oral notification of the result on October 17, 2002. *See* Def. 56.1 ¶ 12; Lunney Aff. ¶ 12. It is undisputed that he also received a tape recording of the hearing on this date, and that the tape "contained all [of] the information contained in the written decision including the evidence relied upon and reasons for the penalty imposed." *See* Def. Reply Mem. at 23. [13]

The written disposition stated that it was based on "the written report by Officer Hadzovic and because it was recovered in the locker which was lock [sic]. Also from the testimony of Sgt. Guadagno who stated that the showers are normally completed by 7:15-7:30 PM."*See* Superintendent Hearing Disposition Rendered, dated Oct. 17, 2002 (reproduced in Ex. H to Selsky Decl.). It noted the reasons for the disposition as: "to impress upon this person the seriousness of this act and to act a[s] a deterrent to other[s]. Also that the possession of illegal weapons in a correctional facility is very detrimental to the safety and security of all those that work and live [h]ere, and this will not be tolerated."*See id.*Lunney makes no allegations regarding what was or was not on the tape. Nor does he allege that the written decision contained any information that was not on the tape.

**\*28** In its original ruling on this claim, this Court allowed Lunney's claim regarding his failure to receive a written disposition of his disciplinary hearing to proceed because "the right to receive a 'written statement of the disposition' [is] a requirement that has been in place since the Supreme Court's decision in *Wolff v. McDonnell* [418 U.S. 539, 563 (1974) ]."*See Lunney I,* 2005 WL 121720, at \*13 (citing *Luna v. Pico,* 356 F.3d 481, 487 (2d Cir.2004)); *see also Kalwasinski v. Morse,* 201 F.3d 103, 108 (2d Cir.1999); *McCann v. Coughlin,* 698 F.2d 112, 121-22 (2d Cir.1983); *Higgins v. Coombe,* 2002 WL 362776, at \*2 (S.D.N.Y. Mar.6, 2002); *Silva v. Sanford,* 1998 WL 205326, at \*6 (S.D.N.Y. Apr.24, 1998). The Court noted at that time that the defendants might be able to defeat the due process claim based upon additional facts (not contained in the complaint) showing, for example, that Lunney was informed of the disposition or was otherwise given the opportunity to obtain it. *Lunney I,* 2005 WL 121720, at \*13. In addition, the Court left open the possibility that the defendants could show entitlement to qualified immunity. *Id.*

Prison disciplinary hearings are subject to a harmless error analysis. *See Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991) ("If a person may be convicted and obliged to serve a substantial prison sentence notwithstanding a constitutional error determined to be harmless, surely the conditions of confinement of a sentenced prisoner may be made temporarily more severe as discipline for a prison rules infraction despite a harmless error in adjudicating the violation.") (internal citations omitted); *Louis v. Ricks,* 2002 WL 31051633, at \*11 (S.D.N.Y. Sept.13, 2002) (citing *Powell,* 953 F.2d at 750). Defendants now argue that any failure to provide Lunney with a written disposition of the result of his disciplinary hearing in a timely fashion was

harmless, because: (1) "there was no information contained in the written hearing decision not provided to plaintiff before his final challenge to the hearing decision and penalty,"*see* Def. Reply Mem. at 23; (2) after receiving a tape recording of the hearing which contained the rationale, "he did not add any new substantive arguments related to the rationale ... because he had already made the best arguments possible,"*see* Def. Mem. at 26; and (3) his sentence was reduced for exceeding the guidelines, despite his failure to raise the issue on appeal. *See* Def. Mem. at 23. Thus, defendants argue, the claim must fail. *See* Def. 56.1 ¶¶ 12, 35; Def. Mem. at 22-23; Def. Reply Mem. at 25-27.

Lunney does not contradict any of the relevant facts asserted by defendants on this point. Rather, he states that although his punishment at the second disciplinary hearing was in the end reduced for exceeding the guidelines, he never made this challenge on appeal. *See* Pl. Mem. at 57. He uses this fact to argue that "[p]erhaps if plaintiff had received a copy of the disposition paperwork, he could have argued on appeal that the penalty ... exceeded the guidelines."*See id.*This is the only harm Lunney points to based on his not having received the written disposition.

**\*29** Lunney's argument fails for two reasons. First, he was aware of his nine-month sentence following the disciplinary hearing. *See* Def. 56.1 ¶ 12 (citing Lunney Dep. at 93, 100-101). Thus, nothing prevented Lunney from raising the alleged illegality of the nine-month sentence even without a copy of the actual written disposition. Second, Lunney has not shown that there was any potential for any other outcome had he been provided with a copy of the written disposition. For example, he makes no argument that he could have received an even greater sentence reduction had he had access to the written hearing disposition. Given that the error in the sentence was remedied in November 2002 prior to his serving six months in confinement, any failure on his part to raise the argument that his sentence was incorrect was necessarily harmless.

### Conclusion

For the foregoing reasons, defendants' motion should be granted, with the exception of the portion of their motion concerning Lunney's claim of (1) excessive force against Blot and Frazier and (2) his First Amendment retaliation claims (a) against defendant Blot based on the allegedly retaliatory assault, threats, and deprivation of recreation and showers

(b) against defendant Frazier for his participation in the retaliatory assault. [14]

### PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. *See also* Fed.R.Civ.P. 6(a), (e).

Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Lewis A. Kaplan, 500 Pearl Street, New York, New York 10007, and to the undersigned at the same address. Any request for an extension of time to file objections must be directed to Judge Kaplan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 144-45, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

### Footnotes

1   This officer is identified as Lieutenant "Brureton" in the complaint.

2   *See* Notice of Motion for Summary Judgment, filed Apr. 24, 2006 (Docket # 72); Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, filed Apr. 24, 2006 (Docket # 73) ("Def.Mem."); Defendants' Rule 56.2 Statement, filed Apr. 24, 2006 (Docket # 74); Declaration of Brian Fischer, filed Apr. 24, 2006 (Docket # 75) ("Fischer Decl."); Declaration of Paul Kikendall, filed Apr. 24, 2006 (Docket # 76); Declaration of Robert Murphy, filed Apr. 24, 2006 (Docket # 77); Declaration of Michael Blot, filed Apr. 24, 2006 (Docket # 78) ("Blot Decl."); Declaration of Parrish Frazier, filed Apr. 24, 2006 (Docket # 79) ("Frazier Decl."); Declaration of Sean Kober, filed Apr. 24, 2006 (Docket # 80); Rule 56.1 Statement, filed Apr. 24, 2006 (Docket # 81) ("Def.56.1"); Chu Declaration in Support of Defendants' Motion for Summary Judgment, filed Apr. 24, 2006 (Docket # 82); Declaration of Thomas G. Eagen, filed Apr. 24, 2006 (Docket # 83) ("Eagen Decl."); Declaration of Donald Selsky, filed Apr. 24, 2005 (Docket # 84) ("Selsky Decl."); Declaration of Benjamin Lee, filed Apr. 24, 2006 (Docket # 85) ("Lee Decl.").

3   Lunney has also asserted that the assault occurred in retaliation for complaints he has made. The retaliation claim with respect to the assault is discussed separately below in sections III.D.3.e (with respect to Blot) and III.D.4 (with respect to Frazier).

4   Defendants assert that "in the event that the Court finds that there is a genuine dispute of material fact concerning exhaustion, and that plaintiff's claims cannot otherwise be dismissed, the proper procedure would be to hold an evidentiary hearing," Def. Reply Mem. at 10, rather than "proceed directly to trial." *Id.* There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. *See, e.g., Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.) (in motion to dismiss for failure to exhaust administrative remedies under PLRA, court may "decide disputed issues of fact"), *cert. denied,* 540 U.S. 810 (2003); *Priester v. Rich,* 457 F.Supp.2d 1369, 1377 (S.D.Ga.2006) (same); *see also Dukes v. Doe,* 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering without discussion an "evidentiary hearing" on the question of exhaustion under the PLRA); *cf. Pauling v. Sec'y of Dep't of Interior,* 71 F.Supp.2d 231, 232-33 (S.D.N.Y.1999) (issues of fact with respect to equitable tolling of statute of limitations to be decided by the court). As the Supreme Court has recently affirmed, however, exhaustion is an "affirmative defense," much like a statute of limitations defense. *See Jones v. Bock,* --- U.S. ----, ---- - ----, 127 S.Ct. 910, 919-921, 166 L.Ed.2d 798 (2007). Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that "issues of fact as to the application of that defense must be submitted to a jury." *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 243 n. 2 (2d Cir.1984). Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court.

5   Lunney was transferred some time later, in 2004, to Cayuga Correctional Facility, long after the grievances and alleged threats by Fischer were made. *See* Lunney Aff. ¶ 26. Lunney has not alleged any facts regarding this transfer and also has not provided evidence that Fischer caused this transfer. Notably, there is an affidavit from Fischer stating that he was not involved in Lunney's transfer. *See* Fischer Decl. ¶¶ 5-7; *see generally Davidson v. Donnelly,* 2004 WL 1941349, at *3 (W.D.N.Y. Aug.29, 2004) (no claim for retaliatory transfer where plaintiff provided no evidence on reason for transfer and prison officials gave reasons).

6   The Second Circuit has recognized that "the case law on the PLRA's exhaustion requirement does not always distinguish clearly between (a) cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense, (b) situations in which administrative remedies are not 'available' to the plaintiff ...." *Giano v. Goord,* 380 F.3d 670, 677 n. 6 (2d Cir.2004).

7   While defendants argue that "the alleged denial of meals, recreation and showers did not deter the exercise of plaintiff's rights as evidenced by his many grievances," Def. Mem. at 15, as noted, the test for adverse action is an "objective test [which] applies even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits." *Pidlypchak,* 389 F.3d at 381 (citing *Davis,* 320 F.3d at 353).

8    Defendants have made only a conclusory argument as to qualified immunity on this point, *see* Def. Mem. at 33-34, and thus we do not consider it here.

9    This finding of guilt was "apparently overturned," or at least "modified" on appeal, though to what extent and the reason for such action is not clear from the record. *See* Def. Mem. at 16 (citing Lee Decl. Ex. I).

10    Because defendants' motion does not contend that verbal complaints cannot constitute constitutionally protected activity, it is unnecessary to reach this question. The Court notes that some case law indicates that a prisoner's oral complaints to prison guards may provide the basis for a retaliation claim under § 1983. *See Smith v. Woods,* 2006 WL 11312347, at *10 (N.D.N.Y. Apr. 24, 2006), *aff'd,*2007 WL 756410, at *1 (2d Cir. Mar.12, 2007); *Gill v. Riddick,* 2005 WL 755745, at *10 (N.D.N.Y. Mar.31, 2005) (citing cases); *Gaston v. Coughlin,* 81 F.Supp.2d 381, 386 (N.D.N.Y.1999); *Malik'El v. New York State Dept. of Corr. Servs.,* 1998 WL 187459, at *4 (N.D.N.Y. Apr.8, 1998); *but see Garrido v. Coughlin,* 716 F.Supp. 98, 101 (S.D.N.Y.1989) ("verbal confrontation" not protected activity).

11    Defendants make no arguments with respect to qualified immunity on this claim or with respect to the First Amendment claim against Frazier (discussed in the next section), and thus we do not consider the doctrine's applicability with respect to these claims.

12    The defendants and Lunney discuss the matter of "hearing officer bias" in their summary judgment papers. *See* Def. Mem. at 23-24; Pl. Mem. at 50-52; Def. Reply Mem. at 21-22. However, Lunney did not raise this claim in his amended complaint or in his affidavit and thus we do not consider it.

13    Lunney wrote a letter to Donald Selsky, *see* Letter, dated Nov. 14, 2002 (reproduced in Ex. K to Selsky Decl.), stating that the original tape he received was defective, and requesting a new one. Defendants state, and Lunney does not dispute, that he received a new tape around that time. *See* Def. Mem. at 24.

14    Lunney asserts in his amended complaint that Fischer subjected him to "forced labor without pay" while he was in the SHU, *see* Am. Compl. ¶ 16(c). However, this claim is not explained in his affidavit. Nor is any evidence supplied to support it. Accordingly, it is too vague to constitute the basis for a claim and it has not been discussed herein.

---

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.